WILLIAM A. DAVIDSON v. KNAUFF INSURANCE AGENCY, INC., INDIVIDUAL-
LY AND AS AGENT OF UNITED STATES FIDELITY AND GUARANTY COMPANY, AND
UNITED STATES FIDELITY AND GUARANTY COMPANY

No. 8726SC1234

(Filed 21 February 1989)

**1. Appeal and Error § 6.8— no appeal from summary judgment**

Since the trial court failed to certify in its judgment that
there was no just reason to delay the appeal, there could be
no appeal under N.C.G.S. § 1A-1, Rule 54(b) of the court's
judgment finally disposing of at least one but fewer than all
the claims.

**2. Appeal and Error § 6.2— claim finally determined—appeal
delayed—when substantial right is affected**

So long as a claim has been finally determined, delaying
the appeal of that final determination will ordinarily affect
a substantial right *if* there are overlapping factual issues be-
tween the claim determined and any claims which have not
yet been determined.

**3. Appeal and Error § 6.8; Insurance § 69— allegations of false
representations made by defendants—common factual issue in
all claims—substantial right affected by dismissal of some claims**

The trial court's dismissal of plaintiff's negligence, fraud,
and unfair trade practice claims against defendant insurer and
unfair trade practice claim against defendant agent affected
a substantial right since common to all those claims and plain-
tiff's negligence claim against defendant agent which was not
dismissed was the factual issue of whether defendant insurer,
its agent, or both caused plaintiff's injuries by making any
false representation which induced plaintiff to rely on them
to his detriment.

**4. Fraud § 12— representations that insurance coverage had val-
ue—fraud alleged—summary judgment improper**

The trial court erred in granting summary judgment for
defendant insurer on plaintiff's claim that defendant fraudu-
lently induced plaintiff to pay additional insurance premiums
for worthless underinsurance coverage where plaintiff offered
evidence that defendant collected premiums for policies which
stated that they provided "underinsured motorist coverage"

DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

in the amount of $25,000, while the stated coverage did no more than duplicate the uninsured motorist coverage already offered and was thus illusory; the issuance of underinsurance coverage by defendant in return for an additional premium was thus a tacit (albeit false) representation to plaintiff that the coverage issued had some value; the issue whether defendant knew the falsity of its representation or otherwise had the requisite fraudulent intent was not an appropriate subject for summary judgment; there was no merit to defendant's contention that it could not possibly have known that the coverage was worthless until the N. C. Supreme Court decision of *Davidson v. U. S. Fidelity and Guar. Co.*, 316 N.C. 551 (1986), because defendant denied underinsurance coverage under the policy in 1983; and there was no merit to defendant's contention that it could not be held liable for fraud, since it simply offered underinsurance coverage in the minimum amount permitted under the relevant version of N.C.G.S. § 20-279.21(b)(4), because the Legislature did not authorize defendant to offer its underinsurance coverage in a false or misleading manner.

5. **Unfair Competition § 1— unfair trade practice—fraud in sale of underinsured motorist coverage**

Since proof of fraud in the sale of underinsured motorist coverage would necessarily constitute proof of statutorily prohibited unfair and deceptive acts, and plaintiff was entitled to proceed on his claim of fraud, he was likewise entitled to proceed against defendant insurer on his claim for unfair and deceptive trade practices.

6. **Negligence § 29— breach of fiduciary duty—sufficiency of evidence**

The trial court erred in entering summary judgment on plaintiff's negligence claim against defendant insurer where there was a factual issue as to whether defendant agent was acting within the course and scope of its agency with defendant insurer when it allegedly committed the negligent act of breaching its fiduciary duty to inform plaintiff that the underinsurance coverage he was purchasing was worthless.

7. **Unfair Competition § 1— insurance agent's failure to disclose value of underinsurance coverage—evidence of unfair trade practice—summary judgment improper**

The trial court erred in entering summary judgment for defendant insurance agent on plaintiff's claim for unfair and

DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

deceptive trade practices where defendant's renewal of plaintiff's minimum limits underinsurance, without disclosing its true value, was evidence of an unfair trade practice which would at the least tend to deceive the average consumer about the extent of his coverage. N.C.G.S. § 75-1.1; N.C.G.S. § 58-54.4(1).

APPEAL by plaintiff and cross-appeal by defendant Knauff Insurance Agency, Inc. from *Snepp (Frank W.), Judge*. Judgment entered 15 September 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 11 May 1988.

*Hamel, Hamel & Pearce, P.A., by Hugo A. Pearce III, and Lewis, Babcock, Pleicones & Hawkins, by A. Camden Lewis and Daryl G. Hawkins, for plaintiff.*

*Jones, Hewson & Woolard, by Harry C. Hewson and Hunter M. Jones, for defendants.*

GREENE, Judge.

This appeal arises from plaintiff's purchase of an automobile liability policy issued by defendant United States Fidelity and Guaranty Company ("USFG"). The policy was originally procured for plaintiff by Knauff Insurance Agency, Inc. ("Knauff") on or about 11 July 1973 and renewed on each anniversary thereafter through July 1984. Pursuant to the Legislature's enactment of underinsured motorist coverage effective 1 January 1980, the USFG policy issued 11 July 1980 began providing underinsured motorist coverage limits of $25,000 for each person and $50,000 for each accident; these limits remained the same during the 1981, 1982 and 1983 renewal periods. Plaintiff paid an additional annual premium of $1.00 for this underinsured motorist coverage. In March 1983, plaintiff was involved in an automobile accident which caused him serious injuries resulting in medical expenses exceeding $100,000. After plaintiff settled with the driver of the other automobile for $25,000, USFG denied liability for any additional expenses under its policy's underinsurance coverage.

An earlier declaratory judgment action by plaintiff resulted in the determination by this court that both the USFG policy as written as well as the relevant version of Section 20-279.21(b)(4) unambiguously provided that USFG's responsibility under its $25,000 underinsurance coverage would be reduced by plaintiff's $25,000 settlement with the other driver, leaving nothing due from USFG;

DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

this holding was affirmed *per curiam* by our Supreme Court. *Davidson v. U.S. Fidelity and Guar. Co.*, 78 N.C. App. 140, 336 S.E. 2d 709 (1985), *aff'd per curiam*, 316 N.C. 551, 342 S.E. 2d 523 (1986); N.C.G.S. Sec. 20-279.21(b)(4) (1983). As plaintiff's *uninsured* motorist coverage already insured against motorists with less than the statutorily required minimum liability coverage of $25,000, we noted plaintiff's contention that "there are no circumstances under which he can collect on his *underinsured* coverage [of $25,000] and he has paid his premium for this coverage in exchange for nothing. It appears that the plaintiff is correct in this argument but it does not justify our rewriting the policy." 78 N.C. App. at 143, 336 S.E. 2d at 711 (emphasis added); *cf.* N.C.G.S. Sec. 20-279.21(3) (1983) (defining "uninsured motor vehicle" as one without at least minimum liability coverage).

As a result of our judicial determination that plaintiff could not collect under his underinsurance policy with USFG, plaintiff instituted several claims against Knauff and USFG in which he alleged: (1) that Knauff breached its alleged fiduciary duty to disclose the underinsurance coverage was "worthless" and otherwise negligently procured or renewed the USFG policy; and (2) that USFG committed negligence as well as fraud in issuing the policy as subsequently renewed. Plaintiff also alleged that both defendants' actions constituted unfair and deceptive trade practices. Plaintiff conducted discovery which included serving interrogatories on USFG; plaintiff was unsatisfied with its answers and moved that USFG be compelled to answer. Upon the trial court's denial of that motion, both defendants moved for summary judgment on all claims. The trial court subsequently dismissed all claims against USFG. While the trial court also dismissed the claim against Knauff for unfair and deceptive trade practices, the court declined to dismiss plaintiff's negligence claim against Knauff. Plaintiff and defendant Knauff both appeal from the court's summary judgment.

These facts present the following issues: I) as the trial court's summary judgment determined fewer than all the claims between the parties, whether plaintiff and/or Knauff may maintain interlocutory appeals from the court's judgment; and II) whether the trial court properly granted summary judgment (A) dismissing plaintiff's claims against USFG for negligence, fraud and unfair trade practices and (B) dismissing plaintiff's unfair trade practice claim against Knauff.

## DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

I

[1] The trial court's summary judgment dismissed all claims against USFG, and all but the claim against Knauff that it breached alleged fiduciary duties in negligently procuring underinsurance coverage of plaintiff's automobile. Thus, the court's summary judgment is an interlocutory judgment since it "does not dispose of the case, but leaves it for further action for the trial court in order to settle and determine the entire controversy." *Veazy v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E. 2d 377, 381 (1950). However, there are two avenues for appealing judgments which are interlocutory under *Veazy*. First, if there has been a final disposition of at least one but fewer than all claims, the final disposition of those claims may be appealed if the trial judge in addition certifies that there is no just reason to delay the appeal. N.C.G.S. Sec. 1A-1, Rule 54(b) (1988); *Oestreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 129, 225 S.E. 2d 797, 804 (1976) (Rule 54(b) "expedites review of each separable portion of a multiple claim or multiple party action that has been finally adjudicated"); *see id.* at 144, 225 S.E. 2d at 813 (Sharp, concurring in part) (Rule 54(b) simply focuses on individual claims as "unit to which finality concept would be applied"). However, since the court in this case failed to certify in its judgment that there was no just reason to delay the appeal, there can be no appeal of the court's summary judgment under Rule 54(b).

Second, even if no appeal is permitted under Rule 54(b), an *interlocutory adjudication may nevertheless be appealed if it qualifies* under the pertinent provisions of Section 1-277 and Section 7A-27(d). N.C.G.S. Sec. 1-277 (1983); N.C.G.S. Sec. 7A-27(d) (1986); *Oestreicher*, 290 N.C. at 131, 225 S.E. 2d at 805 (reference in Rule 54(b) to appeal under "other statutes" permits appeal under Sections 1-277 and 7A-27(d)). Interlocutory appeals are most commonly allowed under Sections 1-277 and 7A-27(d) if delaying the appeal will prejudice any substantial rights. Sec. 1-277(a); Sec. 7A-27(d)(1). In determining whether a substantial right will be prejudiced by delaying an interlocutory appeal, our Supreme Court has emphasized that "it is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which the appeal is sought is entered." *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E. 2d 405, 408 (1982) (quoting *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E. 2d 338, 343 (1978)).

DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

However, certain guidelines have emerged. Our Supreme Court has agreed with the general proposition that, "The right to avoid one trial on . . . disputed [fact] issues is not normally a substantial right that would allow an interlocutory appeal while the right to avoid the possibility of two trials on the same issues can be such a substantial right." *Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E. 2d 593, 595 (1982). This general proposition is based on the following rationale: when common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn "creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Green*, 305 N.C. at 608, 290 S.E. 2d at 596; *accord Bernick*, 306 N.C. at 439, 293 S.E. 2d at 408-09. Under Section 1-294, perfecting an appeal stays further proceedings upon the judgment appealed from "and upon the matters embraced therein." N.C.G.S. Sec. 1-294 (1983). As the trial of any remaining factually related claims is presumably stayed under Section 1-294, the possibility of two trials of the same factual issues is thereby averted. *See Survey of Developments in North Carolina*, 57 N.C.L. Rev. 827, 909 n.113 (1979); *see also Survey of Developments in North Carolina Law*, 61 N.C.L. Rev. 957, 1008 (1982) (stating *Green*-type cases subordinate judicial efficiency to jury's need for simple issues by allowing interlocutory appeals of different claims arising from same facts).

The *Green* proposition concerning the trial of common fact "issues" refines the Court's earlier holding in *Oestreicher* concerning the trial of related "causes": where plaintiff raised related claims for breach of contract, fraud, and punitive damages arising from performance of the same lease contract, the *Oestreicher* Court held "plaintiff had a substantial right to have all three causes tried at the same time by the same judge and jury." 290 N.C. at 130, 225 S.E. 2d at 805. It has been suggested that a loose application of the *Oestreicher* Court's reference to the substantial right to try all "causes" at once may produce results inconsistent with the *Green* Court's reference to the more limited right to try only common fact "issues" at once. *J & B Slurry Seal Co. v. Mid-South Aviation Inc.*, 88 N.C. App. 1, 7-9, 362 S.E. 2d 812, 817 (1987).

However, given the related fact issues underlying the "causes" in *Oestreicher*, it is clear under either *Oestreicher* or *Green* that

if the final disposition of multiple claims depends upon the determination of any common fact issues, then the parties ordinarily have a substantial right that those issues be determined by the same jury. *Green*, 305 N.C. at 606-08, 290 S.E. 2d at 596 (since resolution of remaining contribution claim *as pled* did not depend upon factual issues overlapping primary liability claim, appeal from summary judgment on liability claim dismissed); *Bernick*, 306 N.C. at 439, 293 S.E. 2d at 408-09 (plaintiff had substantial right to have one jury decide whether one, some, all or none of joint defendants caused plaintiff's injuries); *see also Pelican Watch v. U.S. Fire Ins. Co.*, 323 N.C. 700, 375 S.E. 2d 161 (1989) (per curiam) (dismissal of compensatory damage claim under insurance contract affected substantial right under *Oestreicher* where remaining unfair trade claim arose from same contract).

Conversely, orders which do not determine even one claim, but simply require subsequent trial of the fact issues underlying that claim, are generally not appealable since "the avoidance of one trial is not ordinarily a substantial right." *Green*, 305 N.C. at 608, 290 S.E. 2d at 596; *see, e.g., Tridyn Inds., Inc. v. American Mut. Ins. Co.*, 296 N.C. 486, 491-92, 251 S.E. 2d 443, 447 (1979) (partial summary judgment on liability is non-appealable interlocutory order); *Waters*, 294 N.C. at 208-09, 240 S.E. 2d at 344 (denial of motions to dismiss is not appealable).

[2]   As it protects the substantial right to avoid inconsistent verdicts, the "one trial/two trial" proposition does not purport to determine those cases where other substantial rights are at stake. *E.g., In re McCarroll*, 313 N.C. 315, 316, 327 S.E. 2d 880, 881 (1985) (per curiam) (order denying motion for jury trial affects substantial right and is appealable); *Faircloth v. Beard*, 320 N.C. 505, 506, 358 S.E. 2d 512, 514 (1988) (order granting motion for jury trial is likewise appealable). However, insofar as interlocutory appeals may arise from multiple claim cases similar to *Oestreicher, Green* and *Bernick*, we may generally state that so long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right *if* there are overlapping factual issues between the claim determined and any claims which have not yet been determined.

[3]   In light of this general proposition, the trial court's dismissal of plaintiff's negligence, fraud and unfair trade practice claims against USFG and unfair trade claim against Knauff affects a substantial right since there are factual issues common to the claims dismissed

by the trial court and the negligence claim it did not dismiss. Common to all claims is the factual issue whether USFG, its agent Knauff or both caused plaintiff's injuries by making any false representation which induced plaintiff to rely to his detriment: given Knauff's purported agency for USFG, a jury considering Knauff's actions on one hand and a separate jury considering the imputation of those actions to USFG on the other could reach inconsistent verdicts on whether Knauff's actions caused plaintiff's injuries. *See Bernick*, 306 N.C. at 438-39, 293 S.E. 2d at 409 (in action including imputed negligence claim, substantial right to have one jury determine whether one, some, all or none of joint defendants caused plaintiff's injuries); *see also Fox v. Wilson*, 85 N.C. App. 292, 298, 354 S.E. 2d 737, 741 (1987) (interlocutory determination of claims including *respondeat superior* claim held appealable since all claims arose from same transaction). Accordingly, we hold under Sections 1-277(a) and 7A-27(d)(1) that plaintiff may appeal as a matter of right the dismissal of its claims against both defendants.

However, the trial court's denial of Knauff's motion to dismiss plaintiff's remaining negligence claim does not entitle Knauff to an immediate appeal under substantial right analysis since there has been no final disposition whatsoever of that claim. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 424, 302 S.E. 2d 868, 871 (1983) (error to grant certiorari to hear appeal from denial of summary judgment motion). Therefore, we dismiss Knauff's cross-appeal.

Plaintiff also appeals the trial court's denial of his motion to compel discovery. This also is an attempt to appeal from a non-appealable interlocutory order. *Shelton v. Morehead Memorial Hosp.*, 318 N.C. 76, 80, 347 S.E. 2d 824, 827 (1986) (denial of motion to compel discovery is non-appealable). However, neither the trial court's order nor this opinion prevent plaintiff from filing additional or amended interrogatories or requests for documents in light of defendants' answers and objections to discovery.

## II

At the outset, we note that plaintiff responded to defendants' motion for summary judgment with his own affidavit which, among other things, verified the contents of his amended complaint. As neither defendant made any motion to strike any provision of plaintiff's verified complaint, we will treat the complaint as an additional responsive affidavit under Rule 56(e) of our Rules of Civil Procedure. N.C.G.S. Sec. 1A-1, Rule 56(e) (1983); *see Schoolfield v. Collins*,

281 N.C. 604, 612, 189 S.E. 2d 208, 213 (1972) (to extent verified pleadings meet requirements of Rule 56(e), pleadings treated as affidavits); *North Carolina Nat'l Bank v. Harwell*, 38 N.C. App. 190, 192, 247 S.E. 2d 720, 722, *disc. rev. denied*, 296 N.C. 410, 251 S.E. 2d 468 (1979) (failure to object to form or sufficiency of verified pleading waived objection on summary judgment).

The summary judgment materials may be briefly summarized as follows: defendants answered plaintiff's claims by admitting Knauff had an agency contract with USFG and that Knauff was acting within the course and scope of its agency when it co-signed the July 1982 renewal of the USFG policy. USFG further admitted that USFG had denied underinsurance liability under the policy and that that denial had been judicially upheld. Defendants contended that they could not be liable on these claims since they were required by Section 20-279.21 to offer plaintiff at least the minimum $25,000 underinsured motorist coverage issued in 1983. James W. Knauff, the president of Knauff Insurance Agency, Inc., stated in his affidavit that the policy itself had been issued in compliance with relevant portions of the North Carolina "Personal Auto Manual" approved by the Insurance Commissioner. In support of their motion for summary judgment, defendants offered Mr. Knauff's affidavit and copies of relevant portions of certain insurance statutes, the North Carolina Personal Auto Manual, and certain written communications with the North Carolina Rate Bureau and the Insurance Commissioner occurring between 1979 and 1985. We note that, in July 1982, Section 20-279.21(b)(4) provided that the limit of payment of underinsurance coverage "is only the difference between the limits of the liability insurance that is applicable and the limits of the underinsured motorist coverage as specified in the owner's policy." N.C.G.S. Sec. 20-279.21(b)(4) (1983).

Plaintiff stated in his own affidavit that he purchased automobile liability insurance in July 1982 through defendant Knauff and at that time requested "underinsurance coverage." He stated that "the agent at Knauff Insurance represented to me that I was in fact purchasing underinsurance coverage. It was my understanding at the time based upon my discussions with the agent that underinsurance coverage provided coverage for damages in excess of at-fault [sic] driver's insurance coverage up to the amount that I purchased [,] *provided my . . . injuries were in excess of the at-fault driver's coverage*." (Emphasis added.) Plaintiff further stated that "the declaration page of my policy indicates that I was re-

DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

ceiving underinsurance coverage and that I paid a premium for underinsurance coverage . . . . I relied upon Knauff Insurance Agency and USF&G to provide me the underinsurance coverage which I requested. I had no knowledge at the time of purchase that I was not in fact receiving underinsurance coverage." Plaintiff stated that had he been informed he was purchasing worthless underinsurance coverage, he would have purchased increased coverage in order to assure protection. Plaintiff stated that he relied upon Knauff and USFG in deciding what type and amount of insurance to purchase. Plaintiff offered copies of his past insurance policies with USFG which, commencing in July 1980, included a declaration page which shows additional "underinsured motorist coverage" with liability limits of $25,000 for an additional premium of $1.00. The endorsement attached to each policy after July 1980 was titled "Underinsured Motorist Coverage—North Carolina."

We also note the record contains Mr. Knauff's deposition in which he asserts, among other things, that the minimum limits underinsurance coverage of $25,000 *did* provide some underinsurance protection when the limits were enacted in January 1980; although the minimum liability coverage for all motorists was raised in January 1980 from $15,000 to $25,000, policies issued before January 1980 with the lower limits would remain in effect for twelve months after their issuance. Thus, it appears plaintiff's $25,000 underinsurance coverage would have provided some protection against those motorists with the lower liability limits from the time he renewed his policy in July 1980 until the expiration of the older policies on or before 31 December 1980.

A

Claims Against USFG

[4] *Fraud.* Plaintiff first claims that USFG fraudulently induced plaintiff to pay additional insurance premiums for worthless underinsurance coverage by representing that the additional premiums would provide underinsurance benefits if plaintiff were injured by an underinsured motorist—although USFG allegedly knew plaintiff could never recover. The elements of fraud are (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) which results in damage to the injured party. *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E. 2d 674, 677 (1981); *see also Payne v. N.C. Farm Bureau Mut. Ins. Co.*, 67 N.C. App.

692, 696, 313 S.E. 2d 912, 914-15 (1984) (approving statement of fraud claim where plaintiff failed to secure other insurance coverage based on insurer's misrepresentation). To overcome summary judgment, a plaintiff alleging fraud must forecast evidence that (1) defendant made a definite and specific representation to him that was materially false; (2) that defendant knew the representation was false; and (3) plaintiff reasonably relied on the representation to his detriment. *Kent v. Humphries*, 50 N.C. App. 580, 588, 275 S.E. 2d 176, 182, *modified on other grounds and aff'd*, 303 N.C. 675, 281 S.E. 2d 43 (1981).

Based on the summary judgment materials noted above, we conclude plaintiff has raised material issues of fact which entitle him to proceed with his fraud claim against USFG. First, plaintiff has offered evidence that USFG made a false representation or concealed a material fact in issuing its policy. Specifically, USFG collected premiums for policies which stated they provided "underinsured motorist coverage" in the amount of $25,000. However, as we noted earlier, the purported additional underinsurance coverage offered by USFG after 31 December 1980 did no more than duplicate the uninsured motorist coverage already offered and was thus illusory. Neither defendant offered any summary judgment evidence that the underinsurance coverage offered in July 1982 was anything but worthless. The issuance of underinsurance coverage by USFG in return for an additional premium was thus a tacit (albeit false) representation to plaintiff that the coverage issued had some value.

Based on nearly identical facts, the Illinois Supreme Court held a claim for fraud was stated where the insurer had collected additional premiums for underinsurance coverage which only duplicated the policy's uninsured coverage:

> Because the minimum limits for underinsured-motorist coverage would not exceed the minimum insurance carried by an Illinois resident, the plaintiffs argue that they could never collect on [minimum limits] underinsured-motorist coverage following an accident in Illinois with an Illinois resident. They also contend that the insurance will not pay in any other circumstance. . . . Here, the plaintiffs alleged that the defendants, by their conduct, represented that the coverage had value. The plaintiffs also alleged that the defendants knew that the representations were false, that the representations were made for the purpose of inducing the plaintiffs to purchase insurance, and that in reasonable reliance on the representations, the plain-

DAVIDSON v. KNAUFF INS. AGENCY

[93 N.C. App. 20 (1989)]

tiffs purchased the coverage in question. We conclude that these allegations are sufficient to state a cause of action for fraud. . . . [T]he plaintiffs allege not that they were overcharged for something that had some value, but rather that they were charged premiums for coverage that had no value. *We are of the opinion that the issuance of coverage by an insurance company in return for a premium is a tacit representation to the consumer that the coverage has value. Assuming . . . that the coverage has no value . . ., we find that the insurance company defendants have made a false representation of the value of the coverage by issuing it without disclosing that it had no value. . . . The defendants contend that they cannot be held liable for fraud because the Legislature required them to offer the coverage in question. That did not authorize them to sell it in a false and misleading manner, however.*

*Glazewski v. Coronet Ins. Co.*, 108 Ill. 2d 243, 483 N.E. 2d 1263, 1265-66 (1985) (emphasis added).

The issue whether USFG knew the falsity of its representation or otherwise had the requisite fraudulent intent is not an appropriate subject for summary judgment under these facts. The affidavit and deposition of USFG's agent, Mr. Knauff, do not necessarily shed light on USFG's intent: contradictory inferences on this issue could reasonably be drawn from these summary judgment materials in any event. *See generally Kidd v. Early*, 289 N.C. 343, 370, 222 S.E. 2d 392, 410-11 (1976). Since USFG apparently denied underinsurance coverage under the policy in 1983, we reject USFG's argument that it could not *possibly* have known in July 1982 that the coverage was worthless until our Supreme Court affirmed our first decision in this case in 1986.

Like the Illinois Supreme Court in *Glazewski*, we furthermore reject USFG's contention that it cannot be held liable for fraud since it simply offered underinsurance coverage in the minimum amount permitted under the relevant version of Section 20-279.21(b)(4). Irrespective of the minimum limits approved, the Legislature did not authorize USFG to offer its underinsurance coverage in a false or misleading manner. USFG relies on certain transmittal letters by the Insurance Commissioner and provisions of the North Carolina Personal Auto Manual to support its assertion that the Commissioner authorized its offering of these policies. However, both the Manual and the Commissioner's correspondence simply authorize the actual wording of the policies and endorsements:

nothing in the record evidences any authorization of the particular manner by which USFG offered this policy. Furthermore, we note the correspondence with the Commissioner in the record is dated *before* USFG sold plaintiff underinsurance coverage in July 1980: again, minimum limits underinsurance coverage of $25,000 did provide some underinsurance coverage against those motorists who continued through December 1980 to be insured at the prior minimum liability limits of $15,000.

Thus, the materials in the record do not demonstrate that either the Legislature or the Insurance Commissioner approved USFG's practice of offering minimum limits underinsurance coverage without disclosing its true value. Accordingly, under these circumstances we hold the trial court erred in granting summary judgment in favor of USFG on plaintiff's fraud claim.

[5] *Unfair and Deceptive Trade Practices.* As we have held plaintiff has raised material fact issues in support of its fraud claim against USFG, we likewise hold plaintiff is entitled to proceed against USFG with his claim for unfair or deceptive trade practices since proof of fraud in this case would necessarily constitute proof of statutorily prohibited unfair and deceptive acts. *See Winston Realty Co. v. G.H.G. Inc.*, 314 N.C. 90, 97, 331 S.E. 2d 677, 681 (1985); N.C.G.S. Sec. 75-1.1 (1983); N.C.G.S. Sec. 58-54.4(1) (1982). Even if USFG's representations concerning underinsurance were technically true, the representations clearly had the tendency to deceive the average consumer as to the coverage and value of underinsurance in the minimum amount. *Cf. Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 265-66, 266 S.E. 2d 610, 622 (1980).

[6] *Negligence.* Plaintiff has also asserted that USFG had a fiduciary obligation to inform him that the underinsurance coverage he was purchasing was worthless. A fiduciary relationship exists "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). We have often held that an insurance agent is the insured's fiduciary with respect to procuring insurance and advising him as to the scope of his coverage. *E.g., R-Anell Homes, Inc. v. Alexander & Alexander, Inc.*, 62 N.C. App. 653, 659, 303 S.E. 2d 573, 577 (1983) (insurance agent has fiduciary duty to keep insured informed about coverage); *see also Gaston-Lincoln Transit v. Maryland Cas. Co.*,

285 N.C. 541, 551, 206 S.E. 2d 155, 161 (1974) (plaintiff may rely upon assumption that policy renewed upon same terms and conditions as earlier policy).

However, there has as yet been no determination whether USFG's agent Knauff was negligent in renewing the USFG policy in July 1982 without disclosing or ascertaining the true value of the underinsurance coverage. We note USFG's admission that Knauff was acting in the course and scope of its agency when it renewed the USFG policy in July 1982. With respect to the imputation of any negligence from Knauff to USFG, the summary judgment materials accordingly raise the factual issue whether Knauff was acting within the course and scope of its agency with USFG when it allegedly committed negligent acts. The trial court thus erred in entering summary judgment on plaintiff's negligence claim against USFG. *See Harrell v. Davenport*, 60 N.C. App. 474, 478-79, 299 S.E. 2d 308, 311 (1983).

B

Unfair and Deceptive Trade Claim Against Knauff

[7]   We note plaintiff's amended complaint deleted his fraud claim against Knauff; however, plaintiff's summary judgment materials nevertheless raise material issues of fact precluding summary dismissal of his remaining unfair trade practice claim against Knauff. Plaintiff's affidavit and exhibits set forth Knauff's representations about the insurance protection afforded by minimum limits underinsurance coverage. As discussed above, offering underinsurance coverage to an insured is a tacit representation that the coverage offered has some value. As we have held with respect to USFG, Knauff's renewal of plaintiff's minimum limits underinsurance — without disclosing its true value — is evidence of an unfair trade practice which would at the least tend to deceive the average consumer about the extent of his coverage. Sec. 75-1.1; Sec. 58-54.4(1); *see generally Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 468-72, 343 S.E. 2d 174, 179-80 (1986); *see also Gaston*, 285 N.C. at 551, 206 S.E. 2d at 161 (insured may assume that policy will be renewed upon same terms as earlier policy). Accordingly, the trial court erroneously entered summary judgment against plaintiff on this claim.

Our disposition may thus be summarized as follows: 1) we dismiss the cross-appeal of defendant Knauff from the denial of

IN RE GROVES

[93 N.C. App. 34 (1989)]

its motion for summary judgment; 2) we dismiss plaintiff's appeal from the trial court's order denying his motion to compel discovery; 3) we reverse and remand the trial court's entry of summary judgment dismissing plaintiff's claims against USFG for negligence, fraud and unfair and deceptive trade practices; and 4) we reverse and remand the trial court's judgment dismissing plaintiff's claim against Knauff for unfair and deceptive trade practices.

Appeal by Knauff — dismissed.

Appeal by plaintiff from order denying motion to compel discovery — dismissed.

Appeal by plaintiff from dismissal of claims against defendants — reversed and remanded.

Judges ARNOLD and ORR concur.