SHELBY H. SMALL, Plaintiff v. ALBERT B. SMALL, Defendant

ALBERT B. SMALL, Plaintiff v. SHELBY H. SMALL, Defendant and Third Party Plaintiff v. ALJO ENTERPRISES, INC., Third Party Defendant

Nos. 8826DC441
8826DC442

(Filed 16 May 1989)

1. **Appeal and Error § 6.2— dismissal of equitable distribution claim—interlocutory appeal—substantial right affected**

    Defendant could appeal the dismissal of her equitable distribution counterclaim as a matter of right even though it would otherwise be interlocutory since a substantial right would be affected in that there were factual issues overlapping the equitable distribution counterclaim which was dismissed by the court and the third party claim against her husband's corporation, which the court declined to determine. N.C.G.S. § 1-277(a), N.C.G.S. § 7A-27(d).

2. **Divorce and Alimony § 30; Husband and Wife § 11.2— postnuptial agreement—release of equitable distribution rights—analyzed under property settlement rules**

    In an action in which the parties signed a postnuptial contract and subsequent separation agreements, defendant's purported release of equitable distribution rights must be analyzed with reference to property settlement rules rather than separation agreement rules where defendant's postnuptial release of all rights to plaintiff's property was part of a complete property settlement and other provisions of the postnuptial agreement releasing alimony rights were clearly severable from the property division.

3. **Divorce and Alimony § 21.9— agreement releasing equitable distribution rights—prior to adoption of Equitable Distribution Act—valid** `

    Defendant's release of property rights under a 1980 postnuptial contract did not violate public policy simply because it was executed prior to the adoption of N.C.G.S. § 50-20(d). The Court of Appeals has consistently ruled that otherwise valid marital agreements releasing all spousal property rights will bar claims for equitable distribution even if those set-

tlements were executed prior to the adoption of the Equitable Distribution Act.

**4. Husband and Wife § 12— separation agreement and property settlement—resumption of marital relations—property settlement not rescinded**

The trial court properly granted plaintiff's motion for summary judgment denying defendant's claims for equitable distribution where defendant's release of her equitable distribution rights was not rescinded simply because the parties continued or resumed sexual relations after their execution of a postnuptial contract and the first and second Separation/Property Settlement Agreements. Defendant's waiver of equitable distribution in the postnuptial contract was executed long before the parties agreed to separate and neither the express language of any of the agreements nor any summary judgment materials support the notion that defendant's release of her property rights in general and her right to equitable distribution in particular depended on the parties living separate and apart.

**5. Husband and Wife § 10— separation agreement—notarized by plaintiff's attorney**

The Court of Appeals rejected defendant's contention that plaintiff's attorney, who was a notary, could not acknowledge a postnuptial agreement and two separation agreements; N.C.G.S. § 52-10(b) merely provides that persons acknowledging a marital contract must not be a party to the contract.

CONSOLIDATED appeal by defendant-third party plaintiff from *Cantrell (Daphene L.), Judge.* Judgment entered 27 January 1988 and 28 January 1988 in District Court, MECKLENBURG County. Heard in the Court of Appeals 29 November 1988.

*William G. Robinson for plaintiff-third party defendant-appellee.*

*Palmer, Miller, Campbell & Martin, P.A., by Joe T. Millsaps, for defendant-third party plaintiff-appellant.*

GREENE, Judge.

This appeal arises from a suit for divorce by Albert Small ("plaintiff") against his wife ("defendant") and defendant's counterclaim for equitable distribution and alimony. In her counterclaim, defendant also sued a third-party defendant, Aljo Enterprises, Inc.

("Aljo"), a corporation wholly owned by plaintiff. The evidence before the district court tends to show the following: plaintiff and defendant were married on 11 May 1978. Plaintiff had previously been married and had children from that previous marriage. Defendant had also been previously married. On 11 August 1978, defendant executed a contract with Aljo which provided that defendant would lend Aljo funds from her separate estate to aid its purchase of certain real estate. On 30 October 1980, plaintiff and defendant also executed a post-nuptial contract (the "Post-Nuptial Contract") which specified how the parties' property would be divided in the event of their divorce or death. Under the Post-Nuptial Contract, each party waived alimony and released all rights in the real and personal property then owned and afterwards acquired by the other party.

After marital difficulties, both parties conferred with an attorney and subsequently executed an agreement (the "First Separation/Property Settlement Agreement") on 4 September 1985. That agreement stated the parties' desire to live separate and apart but to continue the terms of the Post-Nuptial Contract. The agreement also listed certain properties acquired by the parties after the execution of the Post-Nuptial Contract. Having engaged in certain isolated sexual relations with each other after executing the First Separation/Property Settlement Agreement, the parties executed an identical agreement (the "Second Separation/Property Settlement Agreement) on 12 September 1985. Both parties concede that on certain occasions before their divorce they again engaged in sexual relations after executing the Second Separation/Property Settlement Agreement.

Upon plaintiff's filing for divorce, defendant counterclaimed for equitable distribution and alimony. Defendant's counterclaim included a third-party claim against Aljo arising from her 1978 real estate loan. As defendant contended Aljo was plaintiff's alter ego, she requested recovery against both Aljo assets and plaintiff's separate assets in the event her counterclaim for equitable distribution was denied. Plaintiff responded that equitable distribution and alimony were barred by defendant's execution of the Post-Nuptial Contract and the Second Separation/Property Settlement Agreement. After discovery was completed and certain affidavits introduced, the trial court granted plaintiff's motion for summary judgment denying defendant's claims for alimony and equitable

**SMALL v. SMALL**

[93 N.C. App. 614 (1989)]

distribution, but denied summary judgment on defendant's contract claim against Aljo. Plaintiff's petition for divorce was granted.

As defendant's brief contains no assignment of error nor any argument concerning the dismissal of her claim for alimony, any assignment of error to that determination is deemed abandoned. N.C.R. App. 28(b)(5). Thus, we only address defendant's appeal from the dismissal of her counterclaim for equitable distribution arising from Case No. 8826DC442.

These facts present the following issues: I) as the trial court's summary judgment did not determine defendant's contract claim against Aljo, whether the court's dismissal of defendant's equitable distribution claim was an appealable interlocutory order; and II) whether (A) the Post-Nuptial Contract was a valid property settlement releasing defendant's right to equitable distribution even though (B) the Post-Nuptial Contract was executed prior to enactment of the Equitable Distribution Act and (C) the parties engaged in sexual relations after its execution.

I

[1] Although the trial court dismissed defendant's claims for alimony and equitable distribution, the trial court specifically refused to dismiss defendant's claim for reimbursement or payment arising from her loan contract with Aljo. The trial court's dismissal of defendant's equitable distribution claim is interlocutory since it does "not dispose of the case, but leaves it for further action for the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E. 2d 377, 381 (1950); *see generally Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 376 S.E. 2d 488, 490-92 (1989). Since the trial court did not certify there was no just reason to delay the appeal from its summary judgment, there can be no appeal as a matter of right under Rule 54(b) of our Rules of Civil Procedure. N.C.G.S. Sec. 1A-1, Rule 54(b) (1983).

However, defendant may also appeal if the record shows a substantial right would be prejudiced by delaying the appeal. N.C.G.S. Sec. 1-277(a) (1983); N.C.G.S. Sec. 7A-27(d) (1986). We note there are factual issues overlapping the equitable distribution counterclaim dismissed by the court and the third-party claim against Aljo which the court declined to determine. Specifically, the factual issue whether

Aljo is plaintiff's alter ego may determine defendant's legal or equitable interest in Aljo's assets in either an equitable distribution proceeding with plaintiff or in defendant's contract action against Aljo. Defendant also contends the Aljo contract and the Post-Nuptial Contract evidence a single financial transaction between plaintiff and defendant. Given the factual issues overlapping the Aljo contract claim retained by the court and the equitable distribution counterclaim it dismissed, defendant may appeal the dismissal of the equitable distribution counterclaim as a matter of right since a substantial right will otherwise be affected under Section 1-277(a) and Section 7A-27(d). *Davidson*, 93 N.C. App. at ---, 376 S.E. 2d at 491-92 (substantial right affected if factual issues overlap claim retained and claim determined).

## II

[2] Based on the waiver of equitable distribution allegedly evidenced by the Post-Nuptial Contract, and the First and Second Separation/Property Settlement Agreements, the trial court granted summary judgment against defendant's counterclaim for equitable distribution. Entry of summary judgment is appropriate if the summary judgment materials show that there is no genuine issue of material fact requiring a trial and one party is entitled to the judgment as a matter of law. *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E. 2d 228, 231 (1987). The movant has the burden of establishing the lack of a genuine issue of material fact. *Boyce v. Mead*, 71 N.C. App. 592, 593, 322 S.E. 2d 605, 607 (1984).

The summary judgment materials in the record show that the 1980 Post-Nuptial Contract states in part that:

> . . .

> WHEREAS, each of the parties hereto, prior to marriage between them, had accumulated substantial assets which each still owns, respectively, in his or her individual name; and

> WHEREAS, [the parties], each desiring to be just and fair to the other party to this Contract, have mutually agreed with each other as hereinafter set forth.

> NOW THEREFORE, in consideration of the recent marriage between the parties hereto . . . and for other valuable considerations . . . the parties hereto do hereby covenant, contract and agree as follows:

1. Each party acknowledges by the execution of this agreement that said party has been fully informed by the other party of the financial situation, including the amount of assets, liabilities and net income of the other party.

. . .

3. Each party hereby releases and relinquishes all right to dissent from the Will of the other. Excepting only for the right hereinabove reserved for each party to take under the Last Will and Testament of the other party, each party does hereby release, relinquish, and quitclaim unto the other party all of the following rights, whether vested, contingent or inchoate:

(a) in and to any and all real estate and personal property now owned or hereafter acquired by the other party;

. . .

(d) any right or claim for alimony from the other, either pendente lite or permanent.

. . .

5. In the event of the divorce of the parties hereto, any and all property, real or personal, jointly acquired by them during their marriage, shall at the time of such divorce be divided between them, or sold and the proceeds of such sale divided in the event that a physical division of the property itself is impractical, in accordance with the relative percentages of ownership of each party therein as established by the books and records of the parties.

. . .

In their First Separation/Property Settlement Agreement, the parties agreed they would live separate and apart, but specifically stated their desire to continue the provisions of their earlier Post-Nuptial Contract which they deemed "fair and equitable." The parties reiterated their release of all rights in each other's estate "whether such rights arise under any *statute of distribution* or by virtue of any right of election or otherwise . . ." (Emphasis added.) The First Separation/Property Settlement Agreement furthermore listed the property jointly acquired after the Post-Nuptial Contract was executed. On the advice of counsel, the parties exe-

cuted a Second Separation/Property Settlement Agreement on 12 September 1985 since the parties had sexual relations after executing the First Separation/Property Settlement Agreement. Both parties concede that, before their divorce, they occasionally engaged in sexual relations even after the execution of the Second Separation/Property Settlement Agreement.

On appeal, defendant primarily contends that any release of equitable distribution rights is void since (1) the Post-Nuptial Contract was void as against public policy in 1980 and (2) the parties resumed sexual relations after executing the First and Second Separation/Property Settlement Agreements.

A. *Post-Nuptial Contract: Distinction Between Property Settlements and Separation Agreements*

Marital contracts are "ordinarily determined by the same rules which govern the interpretation of contracts." *Lane v. Scarborough*, 284 N.C. 407, 409, 200 S.E. 2d 622, 624 (1973). In determining the meaning and effect of such agreements, the court is "guided by the language of the agreement as it reflects the intentions of the parties" and by the "presum[ption] the parties intended what the language used clearly expresses and . . . mean[s] what on its face it purports to mean." *Hagler*, 319 N.C. at 291, 294, 354 S.E. 2d at 232, 234. Furthermore, it is particularly necessary to distinguish between "property settlements" and "separation agreements" in determining the intended effects of marital agreements:

> Throughout the development of law defining and enforcing marital contracts, courts and advocates have repeatedly confused the terms "separation agreement" and "property settlement" . . . A separation agreement is a contract between spouses providing for marital support rights and is executed while the parties are separated or are planning to separate immediately. A property settlement provides for a division of real and personal property held by the spouses. The parties may enter a property settlement at any time, regardless of whether they contemplate separation or divorce. . . . Usually the parties will refer to the entire document as a "separation agreement," even though its provisions cover both support rights and property rights.

Note, *Property Settlement or Separation Agreement: Perpetuating the Confusion—Buffington v. Buffington*, 63 N.C.L. Rev. 1166,

1169-70 (1985). Our Supreme Court has often noted the differing purposes underlying property settlements and separation agreements as defined above. Thus, the Court has stated that, "the heart of a separation agreement is the parties' intention and agreement to live separate and apart forever . . ." *In re Adamee*, 291 N.C. 386, 391, 230 S.E. 2d 541, 545 (1976). However, a property settlement "contains provisions . . . which might with equal propriety have been made had no separation been contemplated . . ." *Jones v. Lewis*, 243 N.C. 259, 261, 90 S.E. 2d 547, 549 (1955); *see also Shoaf v. Shoaf*, 282 N.C. 287, 291-92, 192 S.E. 2d 299, 303 (1972) (property division was "separable" from alimony provisions since "[t]here is a clear distinction between a property settlement and the discharge of the obligation to support"). It is true that contract provisions covering both support duties and property rights are usually included in a single document which the parties refer to as a "separation agreement." *See* 2 R. Lee, *North Carolina Family Law* Sec. 187 at 461-62 (1980). However, noting the label attached to a provision of a marital agreement is no substitute for analyzing the provision's intended effect in light of the agreement's express language and purposes.

The Post-Nuptial Contract and subsequent agreements purportedly evidence defendant's release of her right to equitable distribution. The right to equitable distribution does not arise from the parties' common law rights and obligations as spouses, but is a statutory property right which may be waived by a complete property settlement. *See Hagler*, 319 N.C. at 290, 354 S.E. 2d at 232; *Wilson v. Wilson*, 73 N.C. App. 96, 99, 325 S.E. 2d 668, 670 (1985). The right to equitable distribution may be released even if it is not specifically enumerated in a general release of spousal property rights. *Hagler*, 319 N.C. at 295, 354 S.E. 2d at 235; *see also Blankenship v. Blankenship*, 234 N.C. 162, 164, 66 S.E. 2d 680, 682 (1951) (general release waived curtesy rights although not specifically named).

Applying the above principles to the Post-Nuptial Contract reveals that defendant's 1980 release of all rights in plaintiff's property is part of a complete property settlement. Although other provisions of the Post-Nuptial Contract released defendant's alimony rights, the alimony provisions of the Post-Nuptial Contract are clearly separable from the property division and are thus irrelevant to this appeal since defendant does not appeal the dismissal of her claim for alimony. *See Shoaf*, 282 N.C. at 291-92, 192 S.E. 2d at 303; *see also* Note, *Contractual Agreements as a Means of*

*Avoiding Equitable Distribution*, 21 Wake L. Rev. 213, 221 (1985) (validity of property settlement is not affected by fact parties also consider ultimate separation). Accordingly, defendant's purported release of equitable distribution in the Post-Nuptial Contract and subsequent agreements must be analyzed with reference to those rules which pertain to property settlements rather than separation agreements.

**[3]** B. *Validity of Release of Property Rights Executed Prior to Adoption of Equitable Distribution Act*

Effective 1 October 1981, our Legislature enacted the Equitable Distribution Act (the "Act") which provides in part that "before, during or after marriage the parties may by written agreement, *duly executed and acknowledged in accordance with the provisions of G.S. 52-10 and 52-10.1* . . . provide for distribution of the *marital* property in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties." N.C.G.S. Sec. 50-20(d) (1987) (emphasis added). Since Section 50-20(d) was not enacted until after defendant's execution of the Post-Nuptial Contract in 1980, defendant contends any waiver of equitable distribution arising from that contract violated public policy in 1980 and was therefore void.

Defendant's public policy argument fails to distinguish between the historical treatment of property settlements and separation agreements. This court has often stated the Act did not purport to affect the general validity of existing marital agreements which divided the parties' property. *E.g., McArthur v. McArthur*, 68 N.C. App. 484, 487, 315 S.E. 2d 344, 346 (1984); *Case v. Case*, 73 N.C. App. 76, 81, 325 S.E. 2d 661, 665, *disc. rev. denied*, 313 N.C. 597, 330 S.E. 2d 606 (1985). On the contrary, Section 50-20(d) specifically incorporates Section 52-10 which, long before the Act, permitted spouses to release their marital rights in each other's property:

[C]ontracts between husband and wife not inconsistent with public policy are valid, and any persons of full age about to be married *and married persons may, with or without a valuable consideration, release and quitclaim such rights which they might respectively acquire or may have acquired by marriage in the property of each other; and such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estate so released.*

SMALL v. SMALL

[93 N.C. App. 614 (1989)]

N.C.G.S. Sec. 52-10(a) (1984) (emphasis added). Section 52-10 authorizes contracts which completely settle property rights arising out of marriage. *Blount v. Blount*, 72 N.C. App. 193, 323 S.E. 2d 738, *disc. rev. denied*, 313 N.C. 506, 329 S.E. 2d 389 (1985). Substantially identical predecessors to the present version of Section 52-10(a) have existed for over one hundred years. *E.g.*, Sess. L. 1871-72, c. 193, s. 28 (if complied with examination statutes, married persons could release dower, curtesy, "and all other rights which they might respectfully acquire or may have acquired by marriage in the property of each other").

Thus, Section 50-20(d) did not reverse a prior public policy against agreements releasing spousal property rights. By incorporating Section 52-10, it instead mandated, among other things, that the policy favoring property settlements continue so that a prior settlement of spousal property rights would also constitute a plea in bar to the equitable distribution of "marital" property under Section 50-20. *See Hagler*, 319 N.C. at 290, 354 S.E. 2d at 232 (valid agreement under Section 52-10 will be honored as bar to equitable distribution); *Blount*, 72 N.C. App. at 195, 323 S.E. 2d at 740. This court has consistently ruled that otherwise valid marital agreements releasing all spousal property rights will bar claims for equitable distribution—even if those settlements were executed prior to the adoption of equitable distribution under the Act. *E.g.*, *Case*, 73 N.C. App. at 81, 325 S.E. 2d at 665; *McArthur*, 68 N.C. App. at 486-87, 315 S.E. 2d at 345; *see also Blount*, 72 N.C. App. at 195, 323 S.E. 2d at 740. Defendant's release of her property rights under the Post-Nuptial Contract as incorporated in the subsequent agreements is as complete as the general releases upheld in *Hagler*, *McArthur*, and *Blount*. In light of those decisions, we reject defendant's contention that her release of property rights under the 1980 Post-Nuptial Contract violated public policy simply because it was executed prior to the adoption of Section 50-20(d).

### C. *Validity of Equitable Distribution Waiver After Sexual Relations*

[4] Defendant also contends the parties' admitted resumption of sexual relations after execution of the First and Second Separation/Property Settlement Agreements necessarily rescinded or voided any equitable distribution waivers they contained insofar as the agreements were executory at the time the parties engaged in

sexual relations. This is incorrect. Irrespective of how often the parties engaged in sexual relations, such relations are only relevant insofar as they may demonstrate the parties have reconciled and are not "living separate and apart." *See, e.g., Higgins v. Higgins,* 321 N.C. 482, 364 S.E. 2d 426 (1988); *see also* N.C.G.S. Sec. 52-10.2 (1988 Supp.) (effective 1 October 1987) (isolated sexual relations ·do not constitute renewal of husband and wife relationship). Thus, whether or not a valid property settlement is fully executed at the time the parties engage in sexual relations, their sexual relations will impliedly rescind the release of property rights under that settlement *only* if the release necessarily depended on the parties living separate and apart. Defendant's mistaken contention again arises from her failure to distinguish property settlements from separation agreements:

> When the contract contains provisions . . . which *might* with equal propriety have been made had no separation been contemplated, and others which would have otherwise been idle, the coming together again of the parties and their conduct may be such as to show an intention to avoid the latter and not the former. *So where the agreement for separation includes a division of property which might have been made if no separation had taken place, the reconciliation does not abrogate this division* . . . If an agreement between husband and wife providing for their separation goes beyond the terms of a mere separation deed and is in effect a good voluntary settlement of the husband on his wife, a subsequent reconciliation between the parties cannot affect the agreement so far as it constitutes a settlement. Hence, the settlement must stand notwithstanding the reconciliation.

*Jones,* 243 N.C. at 261-62, 90 S.E. 2d at 549-50 (emphasis added); *see also* S. Sharpe, *Divorce and the Third Party: Spousal Support, Private Agreements and the State,* 59 N.C.L. Rev. 819, 839 (1981) (property settlement normally not affected by marital relations since living apart furnishes no part of consideration). As one commentator has stated:

> Gradually, North Carolina courts have developed rules distinguishing between the support provisions and the property settlement provisions found in most . . . agreements. These distinctions have been particularly important with regard to issues of . . . reconciliation . . . Reconciliation and resumed

cohabitation of parties will rescind executory provisions of a separation agreement but will have no effect on property settlements.

Note, 63 N.C.L. Rev. at 1170 n.44 (text and note); *accord* Note, 21 Wake L. Rev. at 222 n.75.

Although all of the property provisions in *Jones* had been executed before the parties' reconciliation, the *Jones* Court's analysis quoted above applies equally whether or not the provisions of the property settlement have been fully executed. *Cf. Jones*, 243 N.C. at 261, 90 S.E. 2d at 549 ("*Regardless* of what the rule may be as to a settlement with executory provisions," executed property settlement not affected by reconciliation); *see also Love v. Mewborn*, 79 N.C. App. 465, 339 S.E. 2d 487, *disc. rev. denied*, 317 N.C. 704, 347 S.E. 2d 43 (1986) (upholding cash payments as part of property settlement even though obligation executory when parties resumed sexual relations). We especially note that both the majority and the dissenters in *Higgins* specifically approved the holding of this Court in *Love* that "property settlements may be executed before, during or after marriage and are not necessarily terminated by reconciliation." 79 N.C. App. at 466, 339 S.E. 2d at 488; *compare Higgins*, 321 N.C. at 485, 364 S.E. 2d at 428-29 (majority approvingly stated its holding was consistent with *Love*) *with id.* at 491, 364 S.E. 2d at 432 (Whichard, J., dissenting) (approving holding in *Love* that property settlements not necessarily terminated by reconciliation). As one commentator has summarized:

> Logically, courts should make no distinction between executory and executed provisions of property settlements. Although a reconciliation of the parties demonstrates the failure of consideration to support a separation agreement . . . resumption of cohabitation does not result in a failure of consideration and is not inconsistent with the continued validity of property rights. Even when a husband and wife have not separated, they may make an executory property settlement that bears no relationship to cohabitation.

Note, *Voiding Separation Agreements*, 16 Wake L. Rev. 137, 143 (1980).

Thus, under *Jones*, the resumption of relations does not necessarily rescind a property settlement "which might with equal propriety have been made had no separation been contemplated"

since there is no presumption that a division of property rights is necessarily founded on the parties' desire to separate and live apart. Conversely, where a provision of a marital contract *is* necessarily founded on the parties' agreement to live separate and apart, the parties' resumption of the marital relationship does rescind the provision insofar as the provision is executory: "It is well-settled in our law that a *separation agreement* between husband and wife is terminated for every purpose insofar as it remains executory upon their resumption of the marital relation . . . The heart of a separation agreement is the parties' intention and agreement to live separate and apart forever . . . Therefore, they void the separation agreement if they re-establish their matrimonial home." *Adamee,* 291 N.C. at 391, 230 S.E. 2d at 545. Finally, since the parties' express intent in the agreement is the touchstone for construing the agreement, there may certainly be hybrid agreements which expressly condition property settlement provisions on the parties' living separate and apart. *E.g., Higgins,* 321 N.C. at 484, 364 S.E. 2d at 428 (enforcing parties' express agreement to convey land only if they lived separate and apart for one year).

Applying these principles to the instant case, we note defendant's waiver of equitable distribution in the 1980 Post-Nuptial Contract was executed long before the parties agreed to separate in 1985. Neither the express language of any of the agreements nor any summary judgment materials support the notion that defendant's release of her property rights in general and her right to equitable distribution in particular depended on the parties' living separate and apart. Thus, the parties' continuation of sexual relations after executing the Post-Nuptial Contract did not imply any rescission of defendant's release of her property rights. *See Buffington v. Buffington,* 69 N.C. App. 483, 317 S.E. 2d 97 (1984). Likewise, the parties' resumption of sexual relations after the First and Second Separation/Property Settlement Agreements did not rescind those agreements' incorporation of the Post-Nuptial Contract: the specific waiver of equitable distribution in the First and Second Separation/Property Settlement Agreements in 1985 simply continued and reiterated defendant's 1980 release of property rights and thus constituted a division of property which, as in *Jones,* might have been made if no separation had taken place. Accordingly, defendant's release of her property right to equitable distribution was not rescinded simply because the parties continued or resumed sexual relations after their execution of the Post-Nuptial

Contract and the First and Second Separation/Property Settlement Agreements.

[5]   In passing, we also reject defendant's contention that plaintiff's attorney (who was a notary) could not acknowledge these agreements under Section 52-10(b). N.C.G.S. Sec. 52-10(b) (1984). Section 52-10(b) merely provides that persons acknowledging the marital contract "must not be a *party* to the contract." (Emphasis added.) Defendant also complains she was not adequately represented by counsel at the time she executed the First and Second Separation/Property Settlement Agreements in 1985; however, we do not address this contention since it would not invalidate her original release of property rights including equitable distribution under the 1980 Post-Nuptial Contract.

Affirmed.

Judges BECTON and EAGLES concur.