HUNTER, Judge.
Cleopatra Carr ("plaintiff") appeals from the trial court's orders filed on 19 March 2003 and 21 March 2003 granting the motions to dismiss of Dr. Gordon R. Randall, Wake Radiology Consultants, and Dr. Glendale Moore (collectively "defendants") in a medical negligence lawsuit. We conclude that Carr's interlocutory appeal is premature and, thus should not be heard by this Court.
The evidence indicates that plaintiff's mother, Viola Z. High ("High"), an eighty-eight year old woman, was in a head-on automobile accident on 27 August 2000 in which the airbag deployed in her granddaughter's vehicle. At the scene of the accident, High complained of neck and chest pains and had a visible neck abrasion and neck fracture. An EMS unit immobilized High and transported her to WakeMed Emergency Department where she arrived around 10:12 p.m. Dr. James M. Merritt ("Dr. Merritt"), an emergency room doctor, initially examined High and noted that she complained of neck pains and had tenderness in parts of her neck, chest, and abdomen. Dr. Merritt ordered cervical series x-rays and assigned the case to Dr. Joseph E. Williamson ("Dr. Williamson") before the x-rays were completed. Dr. Gordon R. Randall ("Dr. Randall"), a radiologist, performed the radiology studies. He found that High's C-spine was extremely osteopenic; however, no fractures were identified nor any subluxations. Consequently, Dr. Williamson only diagnosed High as having a contusion with three rib fractures. High was discharged with prescriptions for pain at approximately 6:00 a.m. on 28 August 2000. On 29 August 2000, High returned to WakeMed Emergency Department because her pain had increased. Dr. Glendale Moore ("Dr. Moore") admitted High to the hospital for medical management and ordered physical therapy for High starting on 30 August 2000. High's condition worsened and Dr. Moore requested a neurological consultation on 4 September 2000. Dr. William Ferrell performed the consultation and noted that High had a large bruise over her posterior lower cervical spine. He ordered head and cervical spine MRI studies. Dr. Joseph W. Melamed interpreted the studies and discovered a fractured C-spine with displacement. He called Dr. Randall to review the studies and admitted that examination on the original films was difficult. On 8 September 2000, Dr. Moore noted, "[d]o not resuscitate - as requested by family." On 10 September 2000 High died as a result of complications from the cervical fracture.
The issue on appeal is whether plaintiff's appeal of the trial court's order dismissing three defendants was premature when claims against the remaining defendants still remain before the trial court.
Defendants Moore, Randall, and Wake Radiology Consultants contend that Carr's appeal is interlocutory and not properly before the Court. We agree.
"'An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.'" Tarrant v. Freeway Foods of Greensboro,Inc., ___ N.C. App. ___, ___, 593 S.E.2d 808, 810 (2004), (quoting Veazey v. Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). Interlocutory orders are only appealable in two of the following instances: (1) the trial court certifies that there is no just reason to delay the appeal pursuant to Rule 54(b), or (2) a substantial right would be violated as recognized under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1). Myers v. Barringer, 101 N.C. App. 168, 398 S.E.2d 615 (1990).
The final dispositions of at least one but fewer than all the claims may be appealed if the trial judge certifies that there is no just reason to impede the appeal. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2003). Here, the trial court did not make such a certification. Thus, there can be no appeal of the motion to dismiss pursuant to Rule 54(b).
The second method of appeal for an interlocutory order is available under the conditions set forth in N.C. Gen. Stat. §§ 1-277 and 7A-27(d) (2003). According to the only applicable condition, an appeal may be available if a substantial right would be violated by a delay in the appeal. N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1). A substantial right can be considered to be "`the right to avoid the possibility of two trials on the same issues . . . .'" Myers, 101 N.C. App. at 172, 398 S.E.2d at 618 (quoting Davidson v. Knauff Ins. Agency, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491 (1989)).
"[W]hen common fact issues overlap the claim appealed and any remaining claims, delaying the appeal . . . creates the possibility the appellant will undergo a second trial of thesame fact issues if the appeal is eventually successful. This possibility in turn creates the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."
Myers, 101 N.C. App. at 173, 398 S.E.2d at 618 (quoting Davidson, 93 N.C. App. at 25, 376 S.E.2d at 491).
Defendants cite Myers[1] to support the claim that an interlocutory appeal is premature when the possibility of inconsistent verdicts does not exist in circumstances where there are separate and distinct contracts and duties amongst the claims. In Myers, the plaintiff, a patient receiving treatment at the hospital for depression and migraine headaches, filed a medical malpractice action against the hospital, doctor, and anesthesiology associates for negligently administering his electroconvulsive therapy causing him fractures on both hips. Myers, 101 N.C. App. at 170, 398 S.E.2d at 616. The trial court granted summary judgment in favor of the hospital. While the remaining claims were still pending, plaintiff appealed the summary judgment order. Id. at 171, 398 S.E.2d at 617. This Court dismissed the appeal because defendants had separate contracts and owed different duties to plaintiff. Therefore, the possibility of a second trial over similar factual issues ending in an inconsistent verdict could not occur and a substantial right could not be violated. Id. at 173, 398 S.E.2d at 618. The case sub judice is similar to Myers in that the contracts and duties of defendants are separate and distinct. Under North Carolina law, a health care provider may be liable for negligent acts if, "the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience . . . ." N.C. Gen. Stat. § 90-21.12 (2003). Similar to the distinction between the standard of care for the hospital and the physician in Myers, Dr. Randall's (radiologist) standard of care was different from the care required by Dr. Moore (emergency room physician). Dr. Randall's standard of care was relative to other radiologists with similar training and experience whereas Dr. Moore's should be compared to emergency room physicians with similar training and experience. Additionally, Dr. Randall and Dr. Moore hold separate contracts legally distinguishing their individual responsibilities. As in Myers, different factual issues are present in each claim precluding the possibility of an inconsistent verdict.
Thus, this appeal is premature.
Dismissed.
Chief Judge MARTIN and Judge TIMMONS-GOODSON concur.
Report per Rule 30(e).

The opinion in Myers offered a detailed analysis of the remaining claims because at the time of this Court's hearing they were dismissed at the trial court with prejudice.