MARILYN BAKER, AMY CHAMBERS, GWENDOLYN CLARK, JOSEPH LAMBRIGHT, CARL LEACH, MARY JORDAN, FRANKIE HARRINGTON, JOHN HUBBARD, ANNIE B. LYNN, LENDELL MEDLIN, REUBEN WATERS, ANGELA WALKER, CURTIS WALKER, PERCY WILLIAMS AND GLENN WRIGHT, PLAINTIFFS v. LEROY RUSHING, CLAUDE STEVEN MOSLEY, THE FRANKLIN HOTEL, INC., INDIVIDUALLY AND AS GENERAL PARTNER OF THE FRANKLIN APARTMENTS OF MONROE, A NORTH CAROLINA GENERAL PARTNERSHIP, RUSHING CONSTRUCTION CO., INC., D/B/A THE FRANKLIN HOTEL, DEFENDANTS

No. 9020DC1351

(Filed 15 October 1991)

1. **Appeal and Error § 119 (NCI4th)— summary judgment— fewer than all defendants—appealable**

    Summary judgment for fewer than all defendants was immediately appealable where the trial court made no certification under N.C.G.S. § 1A-1, Rule 54(b) but plaintiffs had made the same claims against several defendants and the resolution of those claims depended upon the determination of common factual issues. Furthermore, plaintiffs have a substantial right to have one jury decide whether one, some, all, or none of the joint defendants caused their injuries.

    **Am Jur 2d, Appeal and Error § 104.**

2. **Landlord and Tenant § 1 (NCI3d)— residential hotel—eviction—summary judgment**

    Summary judgment was improperly granted for some defendants in an action arising from the closing of a residential

BAKER v. RUSHING

[104 N.C. App. 240 (1991)]

hotel where the evidence at the summary judgment hearing showed that each plaintiff resided in The Franklin Hotel pursuant to an oral lease; each plaintiff leased his apartment as his sole and permanent residence; some plaintiffs had resided in the building for as long as six years; each apartment contained one or two bedrooms, a kitchen/living room and a separate bath; the payments for the apartments were made weekly and were referred to by each party as "rent"; a hotel license was obtained for the building, but no significant changes in the operation of the premises occurred; and plaintiffs continued to make weekly payments which were described as rent. At a minimum, the evidence presents genuine issues of material fact regarding plaintiffs' status as residential tenants.

**Am Jur 2d, Landlord and Tenant § 6.**

**3. Principal and Agent § 11 (NCI3d) — torts of agent — personal liability**

Summary judgment could not be supported for defendant Mosley in an action arising from the closing of a residential hotel where Mosley contended that his status as an agent precluded personal liability for the alleged torts of trespass, trespass to chattels, conversion, unfair or deceptive practices, and unfair debt collection practices. It is well settled that a person is personally liable for all torts committed by him or her, notwithstanding that the action may have been taken as an agent for another or as an officer of a corporation.

**Am Jur 2d, Agency § 309.**

**4. Principal and Agent § 11 (NCI3d) — acts of agent — contract claims — summary judgment improper**

Summary judgment was improperly granted for defendant Mosley in his individual capacity on contract claims for breach of the implied covenant of quiet enjoyment and breach of the implied warranty of habitability in an action arising from the closing of a residential hotel where the record before the trial court reveals no evidence on the issue of whether Mosley was acting as an agent on behalf of a disclosed principal or on behalf of an undisclosed principal.

**Am Jur 2d, Agency §§ 302, 316.**

BAKER v. RUSHING

[104 N.C. App. 240 (1991)]

5. **Principal and Agent § 11 (NCI3d) — breach of implied warranty of habitability — personal liability of agent — summary judgment improper**

Summary judgment for defendant on the issue of personal liability for breach of the implied warranty of habitability was improper in part because N.C.G.S. § 42-40(3) includes a broad, statutory definition of landlord which makes irrelevant the common law distinction between disclosed and undisclosed principals. There is evidence that defendant Mosley supervised the on-site manager of the building, gave him instructions on the daily operation of the premises, and had authority to order repairs and to put and keep the premises in a fit and habitable condition. At a minimum, a genuine issue of material fact exists as to Mosley's status as a landlord.

**Am Jur 2d, Landlord and Tenant §§ 767-769.**

6. **Partnership § 9 (NCI3d) — merger of corporate powers — continued existence**

Summary judgment should not have been granted in favor of a partnership in an action arising from the closing of a residential hotel where the two corporate partners had merged. Although defendant partnership contended that it had dissolved and was no longer subject to suit, the partnership offered no evidence as to when it completed the winding up of its affairs, and there is evidence in the record tending to show that the partnership continued to do business after the merger, or at least was involved in winding up, and therefore had not been terminated.

**Am Jur 2d, Partnership §§ 888, 889.**

7. **Corporations § 207 (NCI4th) — dissolution — amenability to suit**

Summary judgment for defendant corporation could not be supported by the dissolution of the corporation in an action arising from the closing of a residential hotel. Dissolution does not terminate the corporation's existence nor its amenability to suit. N.C.G.S. § 55-14-05(b)(5).

**Am Jur 2d, Corporations §§ 2882, 2896, 2903.**

APPEAL by plaintiffs from order entered 11 October 1990 in UNION County District Court by *Judge Kenneth W. Honeycutt.* Heard in the Court of Appeals 25 September 1991.

BAKER v. RUSHING

[104 N.C. App. 240 (1991)]

*Legal Services of Southern Piedmont, Inc., by Vernon J. Cahoon and Theodore O. Fillette, III, for plaintiff-appellants.*

*Griffin, Caldwell, Helder & Lee, P.A., by W. David Lee, for defendant-appellees.*

GREENE, Judge.

Plaintiffs appeal from summary judgment entered for defendants The Franklin Apartments of Monroe, a North Carolina General Partnership (the Partnership), Claude Steven Mosley (Mosley), and The Franklin Hotel, Inc. (Hotel, Inc.).

Plaintiffs' complaint alleges claims against Leroy Rushing, Mosley, Hotel, Inc., the Partnership, and Rushing Construction Co., Inc. d/b/a The Franklin Hotel for breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, unfair or deceptive trade practices, unfair debt collection practices, trespass, trespass to chattels, and conversion.

The evidence in the light most favorable to plaintiffs reveals that plaintiffs resided at 204 West Franklin Street in Monroe, North Carolina, in a building known as "The Franklin Hotel." Their periods of occupancy commenced on various dates beginning in early 1980 and continuing through October 1988. While living in The Franklin Hotel, plaintiffs made weekly payments which were described as "rent," and none of the plaintiffs had other residences. During plaintiffs' tenancies, numerous defects existed in the premises. These defects included lack of hot water at certain times during the month, defective radiators, leaking ceilings, nonweathertight windows, missing windows, roach and rodent infestation, defective doorlocks, faulty plumbing, and accumulation of trash in the common areas. No repairs to the premises were made even after plaintiffs' repeated requests for same.

The owner of The Franklin Hotel from November 1982 until February 1985 was the Partnership. At the time it purchased the building, the Partnership consisted of two individuals: Mosley and Jacob Curtis Blackwood (Blackwood). Subsequently, Mosley and Blackwood each formed corporations: The Franklin Investments, Inc. (formed by Blackwood in February 1984) and Franklin Rentals, Inc. (formed by Mosley in December 1984). In February 1985, the Partnership conveyed The Franklin Hotel to the two corporations. By 1988, Mosley through purchases of stock had become the sole

shareholder of both Franklin Rentals, Inc. and Franklin Investments, Inc. He was also president and director of both corporations, and was responsible for the hiring and firing of The Franklin Hotel's on-site building managers and for determining rental rates and authorizing repairs. In January 1988, a hotel license was obtained for The Franklin Hotel. Prior to that time, summary ejectment was used to remove tenants from the building. In July 1988, Franklin Investments, Inc. and Franklin Rentals, Inc. merged into Hotel, Inc. On 30 September 1988, The Franklin Hotel was conveyed to defendant Rushing Construction Co., Inc. Mosley continued to manage the building pursuant to an oral agreement with defendant Leroy Rushing (Rushing).

In November 1988, Mosley instructed the on-site building manager to begin informing plaintiffs that the building would be closed at the end of December 1988. On 22 December 1988, a temporary restraining order was issued by Chief District Judge Donald Huffman prohibiting Rushing, his agents, employees or building manager from evicting plaintiffs or interfering with plaintiffs' quiet enjoyment of the premises. Despite personal service of this order on Rushing on 22 December 1988, plaintiffs were evicted from their apartments without judicial process on 23 December 1988 by Rushing and Mosley. Several police officers were also present during the eviction. On this same day, the city's chief building inspector inspected the premises. The building inspector determined that The Franklin Hotel was unsafe and unfit for human habitation, and on 28 December 1988, ordered the building condemned. On 30 December 1988, Hotel, Inc. filed articles of dissolution with the Office of the Secretary of State.

---

The issues presented are I) whether the summary judgment for fewer than all defendants affects a substantial right and is therefore immediately appealable; and II) whether summary judgment can be sustained on the grounds that (A) plaintiffs were not "residential tenants" as that term is used in Chapter 42 of the General Statutes, (B) Mosley has no individual liability because he was acting as an agent for the corporate owners of The Franklin Hotel, (C) the Partnership has no liability because it has been dissolved, and (D) Hotel, Inc. has no liability because of its dissolution on 30 December 1988.

I

[1] The trial court entered summary judgment in favor of defendants Mosley, the Partnership, and Hotel, Inc. The record reveals, however, that plaintiffs' action is still pending against the remaining defendants, namely Rushing and Rushing Construction Co., Inc. Because the trial court's award of summary judgment is for fewer than all defendants, it is an interlocutory order as it "does not dispose of the case, but leaves it for further action for the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). Although there is no right of immediate appeal from interlocutory orders and judgments, *Goldston v. American Motors Corp.*, 326 N.C. 723, 392 S.E.2d 735 (1990), appeal of an interlocutory order is permitted in two situations. *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 24, 376 S.E.2d 488, 490, *disc. rev. denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). First, a separable portion of a multiple claim or multiple party action that has been finally adjudicated may be appealed pursuant to N.C.G.S. § 1A-1, Rule 54(b) (1990) if the trial judge certifies that there is no just reason to delay the appeal. *Davidson*, 93 N.C. App. at 24, 376 S.E.2d at 490. The trial court in this case made no certification, therefore no appeal lies under Rule 54(b).

Second, if an interlocutory order is not appealable under Rule 54(b), it may nevertheless be appealed if it meets the requirements of N.C.G.S. §§ 1-277 (1983) and 7A-27(d) (1989). *Davidson*, 93 N.C. App. at 24, 376 S.E.2d at 491. Under these statutes, interlocutory appeals are most commonly allowed if delaying the appeal will prejudice a substantial right. *Id.* Whether a substantial right will be prejudiced by delaying appeal must be determined on a case by case basis. *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982). However, it is well settled that the right to avoid the possibility of two trials on the same factual issues can be a substantial right and therefore one which may support immediate appeal of an interlocutory order. *See, e.g., J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 9, 362 S.E.2d 812, 817 (1987) (the possibility of inconsistent verdicts on the same factual issues satisfies the substantial right requirement of Sections 1-277 and 7A-27(d) ).

In the instant case, plaintiffs have made the same claims against several defendants and the resolution of these claims depends upon

the determination of common factual issues, e.g., the condition of the building in which plaintiffs resided. Furthermore, plaintiffs have a substantial right to have one jury decide whether one, some, all, or none of the joint defendants caused plaintiffs' injuries. *Bernick*, 306 N.C. at 439, 293 S.E.2d at 408-09. Accordingly, the order granting summary judgment as to defendants Mosley, the Partnership, and Hotel, Inc. affects a substantial right and is immediately appealable.

II

The critical question on review of a summary judgment is whether there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. *Smith v. Smith*, 65 N.C. App. 139, 308 S.E.2d 504 (1983). In making this determination, the appellate courts are to consider only the evidence which was before the trial court. 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716 (1983). The movant is not permitted to advance new theories or raise new issues in support of the motion on appeal. *Id.* Here, the evidence at summary judgment related to whether plaintiffs were "residential tenants," whether defendant Mosley had any individual liability, and whether the Partnership and Hotel, Inc. were absolved of liability because of their respective dissolutions. Accordingly, our review is limited to the question of whether the summary judgment can be supported by any or all of these grounds.

A

[2] Defendants contend that the building in which plaintiffs resided was a hotel, and that, accordingly, plaintiffs are not "residential tenants" entitled to the protection of Chapter 42, Article 5, "Residential Rental Agreements" (the Act) or Chapter 42, Article 2A, "Ejectment of Residential Tenants." Plaintiffs argue to the contrary.

The Act provides protection to those persons occupying "a dwelling unit . . . normally held out for the use of residential tenants who are using the dwelling as their primary residence." N.C.G.S. § 42-40(2) (1984). The Act expressly excludes from its application "transient occupancy in a hotel, motel, or similar lodging subject to regulation by the Commission for Health Services." N.C.G.S. § 42-39(a) (1984). Article 2A of Chapter 42 prohibits landlord self-help eviction where residential tenancies are involved. *See*

N.C.G.S. § 42-25.6 (1984) (requiring landlord to proceed under the statutory procedures for summary ejectment of a "residential tenant"). Whether the plaintiffs here were residential tenants must be determined by looking at all of the circumstances, and the fact that a building is identified as a "hotel" and those who reside in it as "guests" is not determinative.

The evidence at the summary judgment hearing showed that each plaintiff resided in The Franklin Hotel pursuant to an oral lease, that each plaintiff leased his apartment as his sole and permanent residence, and that some plaintiffs had resided in the building for as long as six years. Each apartment contained either one or two bedrooms, a kitchen/living room and a separate bath. The payments for the apartments were made weekly and were referred to by each party as "rent." The evidence showed that in January 1988, Mosley obtained a hotel license for the building, but that thereafter no significant changes in the operation of the premises occurred. Plaintiffs continued to make payments on a weekly basis as they had prior to January 1988, and these payments continued to be described as "rent."

This evidence could support a finding that plaintiffs were residential tenants who leased the apartments as their primary residences and thus were entitled to assert claims under Article 5 and Article 2A of Chapter 42. At a minimum, the evidence presents genuine issues of material fact regarding plaintiffs' status as residential tenants, and for this reason, summary judgment was improperly granted.

B

[3] Mosley argues that his status as an agent precludes his personal liability for the alleged torts of trespass, trespass to chattels, and conversion, and for the claims based on his alleged tortious conduct, specifically the claims for unfair or deceptive trade practices, N.C.G.S. § 75-1.1 (1988), and unfair debt collection practices, N.C.G.S. § 75-50 *et seq.* (1988 & Supp. 1990). We disagree. It is well settled in North Carolina that a person is personally liable for all torts committed by him, notwithstanding that he may have acted as an agent for another or as an officer for a corporation. *Strang v. Hollowell*, 97 N.C. App. 316, 318, 387 S.E.2d 664, 665 (1990). Therefore, summary judgment cannot be supported on this basis.

[4] Mosley also argues that any wrongful acts committed by him giving rise to plaintiffs' contract claims cannot support a claim against him in his individual capacity. Whether an agent is subject to personal liability for acts done on behalf of his principal depends on the circumstances of the case. An authorized agent who enters into a contract on behalf of a disclosed principal generally is not personally liable to third parties since the contract is with the principal. *Walston v. R. B. Whitley & Co.*, 226 N.C. 537, 540, 39 S.E.2d 375, 377 (1946). However, an agent who makes a contract for an undisclosed principal is personally liable as a party to the contract unless the other party had actual knowledge of the agency and of the principal's identity. *Howell v. Smith*, 261 N.C. 256, 258-59, 134 S.E.2d 381, 383 (1964). The record before the trial court reveals no evidence on the issue of whether Mosley was acting as an agent on behalf of a disclosed principal or on behalf of an undisclosed principal. Therefore, summary judgment was improper on plaintiffs' contract claims for breach of the implied covenant of quiet enjoyment and breach of the implied warranty of habitability. *See Miller v. C. W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 371, 355 S.E.2d 189, 195 (1987) (an action for breach of the implied warranty of habitability is wholly contractual).

[5] Moreover, summary judgment on the implied warranty of habitability claim was improper for an additional reason. The Act empowers tenants to bring an action against their landlord for breach of the implied warranty of habitability. *Cotton v. Stanley*, 86 N.C. App. 534, 537, 358 S.E.2d 692, 694, *disc. rev. denied*, 321 N.C. 296, 362 S.E.2d 779 (1987). The Act defines a landlord as:

> any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by this Article.

N.C.G.S. § 42-40(3) (1984). This broad, statutory definition of landlord makes irrelevant in determining the liability of an agent the common law distinction between disclosed and undisclosed principals. Thus Mosley, if found to be a "person having the actual or apparent authority of an agent to perform the duties imposed" by the Act, would be subject to individual liability for plaintiffs' claim for breach of the implied warranty of habitability. *See Allen v. Standard Crankshaft & Hydraulic Co.*, 210 F. Supp. 844 (W.D.N.C. 1962), *aff'd*, 323 F.2d 29 (4th Cir. 1963) (where the General Assembly has legislated with respect to the subject matter of a common

law rule, the statute supplants the common law with respect to the particular rule).

On the issue of whether Mosley was "a person with the actual or apparent authority of an agent to perform the duties imposed" by the Act, there is evidence in the record that Mosley supervised the on-site manager of the building, gave him instructions on the daily operation of the premises, and had authority to order repairs and to put and keep the premises in a fit and habitable condition. This evidence could support a finding that Mosley was a landlord as defined by the Act. At a minimum, a genuine issue of material fact exists as to Mosley's status as a landlord and, therefore, summary judgment cannot be supported on this basis.

C

[6] The Partnership asserts that when its two corporate partners merged in July 1988, the Partnership dissolved and, as a result, became nonexistent and no longer subject to suit. Assuming *arguendo* that the merger of the two corporate partners effectively caused a dissolution of the Partnership, *see* N.C.G.S. § 59-59 (1989) (defining dissolution as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business"), "dissolution of itself has no effect on existing liabilities of the partnership. If it did, partners could escape their obligations by dissolving." J. Crane & A. Bromberg, Law of Partnership § 79 (1968) (hereinafter Crane); *see also* II A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership § 7.14 (1988). North Carolina Gen. Stat. § 59-60 (1989) provides that upon dissolution, "the partnership is not terminated, but continues until the winding up of partnership affairs is completed." In other words, "dissolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up, winding up [meaning] the process of settling partnership affairs after dissolution." Unif. Partnership Act § 29, Official Comment, 6 U.L.A. 364 (1969). A partnership's legal existence continues during the winding up of its affairs, and the partnership and partners can sue and be sued for the enforcement of the partnership's rights and obligations. Crane at § 79; *see also* N.C.G.S. § 59-66(a) (1989) (dissolution does not of itself discharge the existing liability of any partner).

BAKER v. RUSHING

[104 N.C. App. 240 (1991)]

The Partnership offered no evidence, documentary or otherwise, as to when, if ever, it completed the winding up of its affairs. Although the Partnership did offer documentary evidence of the July 1988 merger of the Partnership's two corporate partners, there is evidence in the record tending to show that the Partnership continued to do business after the merger, or at least was involved in winding up, and therefore had not been terminated. For example, the general warranty deed conveying The Franklin Hotel property to Rushing Construction Co., Inc., executed on 30 September 1988, lists as grantor "The Franklin Apartments of Monroe, a North Carolina General Partnership." The deed is signed "The Franklin Apartments of Monroe by The Franklin Hotel, Inc., Partner, by Claude Steven Mosley, President." Accordingly, the evidence cannot support summary judgment on this basis.

### D

[7] Hotel, Inc. contends that upon its dissolution on 30 December 1988, the corporation ceased being subject to suit. We disagree. Contrary to defendant's argument, dissolution does not terminate the corporation's existence; a dissolved corporation continues in existence indefinitely. R. Robinson, Robinson on North Carolina Corporation Law § 28.1 (1990). The law in effect when plaintiffs filed their complaint allowed for suits against dissolved corporations based on any liability incurred "prior to such dissolution." N.C.G.S. § 55-114(d) (1982). This is consistent with the current Business Corporation Act. See N.C.G.S. § 55-14-05(b)(5) (1990). Thus, under either statute, dissolution does not terminate the corporation's existence nor its amenability to suit. Accordingly, summary judgment cannot be supported on this basis.

For the foregoing reasons, the trial court erred in granting summary judgment for Mosley, the Partnership, and Hotel, Inc.

Reversed and remanded.

Chief Judge HEDRICK and Judge EAGLES concur.