JOANN BROWN v. D. T. BROWN, JR., ORIGINAL DEFENDANT v. PAUL G. BROWN, ADDITIONAL DEFENDANT

No. 9224DC669

(Filed 21 September 1993)

**Divorce and Separation § 112 (NCI4th) — interim distribution of marital property — lump sum cash award — no authority of court to order**

In N.C.G.S. § 50-20(i1), which allows for an interim distribution of marital property, language providing for the transfer of "the use and possession" of a marital asset does not grant the trial court the authority to order the spouse in control of the marital assets to pay to the other spouse a lump sum cash award where such cash is not an existing marital asset.

**Am Jur 2d, Divorce and Separation §§ 950 et seq.**

Judge GREENE dissenting.

Appeal by defendants from Order entered 2 March 1992 by Judge Alexander Lyerly in Watauga County District Court. Heard in the Court of Appeals 25 May 1993.

*Petree Stockton, by Kevin L. Miller and W. Mark Conger, and McElwee, McElwee & Ward, by William H. McElwee, III, for the plaintiff-appellee.*

*Norris & Peterson, P.A., by Allen J. Peterson, and Hemphill & Gavenus, by Kathryn Hemphill, for defendants-appellants.*

WYNN, Judge.

The plaintiff, JoAnn Brown, and the original defendant, D.T. Brown, Jr., were married on 30 July 1949 and separated on 26 July 1981. JoAnn Brown filed an action against D.T. Brown, Jr. on 13 January 1982 seeking alimony, possession of the marital home, and equitable distribution. The parties entered into a Consent Judgment on 25 February 1982, pursuant to which the plaintiff was awarded $1200/month temporary alimony and a writ of possession of the marital home. The Consent Judgment also provided that the defendant was to continue paying the premiums on the plaintiff's health and hospitalization insurance pending a final resolu-

tion, and that the defendant was entitled to have delivered to him certain personal property from the marital home.

Thereafter, on 26 May 1983, the trial court entered an Order allowing the plaintiff to amend her complaint to include as additional defendants Paul Brown, with whom D.T. Brown, Jr. was an equal partner in Brown Brothers Construction Company, and Paul's former wife, Gladys Brown. The plaintiff claimed an equitable interest in property titled in the name of Paul Brown, Paul Brown and Gladys Brown, or Paul Brown and third parties, on the theory that such property had been purchased with funds from the Brown Brothers Construction Company, the most substantial marital asset. Subsequently, on 10 August 1984, Paul Brown was granted partial summary judgment and the trial court ordered that all of plaintiff's equitable claims with regard "to all properties titled in the name of Paul G. Brown, Gladys Brown and/or Paul G. Brown and third parties" be dismissed with prejudice. By that same order, the trial court denied summary judgment as to all property titled in the name of Paul Brown and D.T. Brown, Jr. or Brown Brothers Construction Company.

Pursuant to Rule 53(a)(2)(b) of the North Carolina Rules of Civil Procedure, the trial court, on 12 December 1988, appointed a referee to hear from the parties and identify the marital assets of JoAnn Brown and D.T. Brown, Jr., determine their value as of the date of separation, and suggest an equitable distribution of the marital assets pursuant to N.C.G.S. § 50-20. The referee submitted a preliminary report to the court on 7 January 1991, to which the plaintiff and defendant filed objections and submitted additional information for consideration. Thereafter, the referee filed a supplemental report on 21 January 1992 which amended the original report based on the objections and additional information received from the parties.

On 22 October 1991, plaintiff filed a motion for an interim distribution of marital assets pursuant to N.C.G.S. § 50-20(i1), enacted effective 1 October 1991. The trial court received memoranda from the parties regarding the motion and, on 2 March 1992, ordered D.T. Brown, Jr. to pay to plaintiff a sum of $400,000 cash and granted plaintiff a lien in that amount against all property titled in the name of D.T. Brown, Jr. The court further ordered that, if D.T. Brown, Jr. failed to pay the award, Brown Brothers Construction Company would be charged with making the payment

and plaintiff would be entitled to foreclose on the company. Additionally, plaintiff's counsel were named as receivers to sell the assets of the Brown Brothers Construction Company in the event that the award was not paid, one-half the proceeds to be paid to JoAnn Brown and one-half to Paul Brown. From that Order the defendants appeal.

———————

By their first assignment of error, the defendants argue that the interim award in the present case was made in contravention of N.C.G.S. § 50-20(i1). We agree.

N.C.G.S. § 50-20(i1) was enacted effective 1 October 1991 and provides for an interim distribution of marital property as follows:

After an action for equitable distribution has been filed the Court may, for just cause, order the spouse in control of marital assets to transfer the use and possession of some or all of those assets to the other spouse provided that any and all assets so transferred shall be subject to a full accounting when the property is ultimately allocated in an equitable distribution judgment. Any property transfer made pursuant to this subsection shall be made without prejudice to the rights of either spouse to claim a contrary classification, value, or distribution in the final equitable distribution trial.

We must determine whether the language in this section providing for the transfer of "the use and possession" of a marital asset grants the trial court the authority to order the spouse in control of the marital assets to pay to the other spouse a lump sum cash award where such cash is not an existing marital asset. We hold that it does not.

In determining the meaning of a statute, it is useful to look to its "purpose and spirit . . . and what it sought to accomplish," as well as to the "history and circumstances surrounding the legislation and the reason for its enactment." *Black v. Littlejohn*, 312 N.C. 626, 630, 325 S.E.2d 469, 473 (1985).

Prior to the enactment of § 50-20(i1), the trial court had no authority to make an interim award of marital assets. Consequently, pending a final outcome of the equitable distribution proceeding, one spouse could retain control of all the cash and income-generating assets belonging to the marital estate, receiving the benefit of those assets, while the other retained nothing and derived no benefit

from the marital estate. This resulted in hardship to the spouse who did not control the assets. It also gave the controlling spouse an incentive to delay the equitable distribution proceedings. Under § 50-20(i1), the trial court is permitted to make an interim transfer of assets, so that the necessary delay pending the equitable distribution proceeding will not prejudice the party who is not in control of cash or income-producing assets.

We hold that the scope of § 50-20(i1) is plainly limited to in kind asset transfers. It does not allow the court to order a cash payment, when cash is not an identifiable marital asset, nor to order the spouse who has control over a marital asset of substantial value to pay a lump sum cash amount to the other spouse as compensation for not having control of the asset.

In the case at bar, the trial court exceeded the scope of § 50-20(i1). Although there was no evidence that $400,000 cash exists as a marital asset, the court ordered a $400,000 payment. To comply with this order, the defendant would either have to tap non-marital assets or liquidate his share of Brown Brothers Construction, both of which exceed the scope of relief under § 50-20(i1). Section 50-20(i1) was not intended to make the transferring spouse transfer something he or she does not possess.

It is plain on the face of the statute that the provision for transfer of "the use and possession" of a marital asset contemplates the transfer of an asset in kind. Transferring the "use and possession" means that the spouse receiving the transfer is entitled to hold the asset pending a final equitable distribution award and use it as it was meant to be used. As such, a spouse might be required to transfer the use and possession of the marital home so that the other spouse can live there; a spouse in control of rental property belonging to the marital estate may be required to transfer it so the other spouse can benefit from the rental income generated by the property; or a spouse may be required to transfer a marital bank account so the other spouse has access to cash.

Because it authorizes only an interim transfer of assets pending the equitable distribution, the statute is designed not to prejudice either party's position at the final equitable distribution. The statute provides that "any and all assets so transferred shall be subject to a full accounting when the property is ultimately allocated in an equitable distribution judgment," and "[a]ny property transfer made pursuant to this subsection shall be made without prejudice

to the rights of either spouse to claim a contrary classification, value, or distribution in the final equitable distribution trial." N.C.G.S. § 50-20(i1).

An order requiring a transferor spouse to break up assets so that cash can be transferred would cause just the prejudice this subsection seeks to avoid. Here, defendant faces the sale of the family business to generate the lump sum cash payment. Since the business is the parties' primary source of income, such sale would certainly result in long-term financial prejudice to both parties.

Defining asset transfers as in kind transfers is the only understanding that makes sense in the context of the rest of the statute. North Carolina's law on the distribution of marital property upon divorce is strictly governed by statute. All equitable distributions and distributive awards are to be made in close accord with § 50-20. Accordingly, in discerning the meaning of this new provision, we must take the statute as a whole into account.

An important feature of the statute is its presumption that equitable distributions are to be in kind. Under § 50-20, the trial court is to classify property as either marital or separate, value it, and distribute it between the parties. *Cable v. Cable*, 76 N.C. App. 134, 331 S.E.2d 765, *disc. rev. denied*, 315 N.C. 182, 337 S.E.2d 856 (1985); *Beightol v. Beightol*, 90 N.C. App. 58, 367 S.E.2d 347, *disc. rev. denied*, 323 N.C. 171, 373 S.E.2d 104 (1988). Only upon a finding by the court that "an equitable distribution of all or portions of the marital property in kind would be impractical," can the presumption of an in kind distribution be overcome and a distributive award permitted. N.C.G.S. § 50-20(e). The distributive award is designed as a secondary remedy to the equitable distribution, to "facilitate, effectuate or supplement a distribution of marital property." N.C.G.S. § 50-20(e).

There is a very good reason why distributive awards under § 50-20(e) are not contemplated under § 50-20(i1). The interim award is precisely that: an award designed to give a party interim relief in anticipation of a final resolution of the estate. The interim award is useful to the party without assets precisely because it can be awarded quickly. It is not slowed by the extensive findings and hearings required for the final distribution. But by the same token, because such findings have not yet been made, it is impossible for the court making the interim award to meet the § 50-20(e)

requirement that it determine the impracticability of an equitable distribution before ordering a distributive award.

Not allowing a cash distributive award prior to a final classification and valuing of the marital estate is also consistent with the statute's goal of keeping the marital estate as intact as possible until the final equitable distribution order is entered. *See* N.C.G.S. § 50-20(i) (providing that the trial court may enter injunctive relief or require a bond or other assurance to avoid the disappearance, waste, or conversion of marital property); *see also* N.C.G.S. § 50-20(c)(11a) (party's waste of marital property is a distributional factor as is the effort to maintain or preserve such property).

Our interpretation is further aided by basic principles of statutory construction.

It is a well-established principle of statutory construction that when a statute is amended, the existing law is not presumed to be changed further than that expressly declared in the amendment. 82 C.J.S. *Statutes* § 384 (1953). Section 50-20(i1) only provided for asset transfers. It did not mention lump sum cash payments or distributive awards. Therefore, such remedies are not options under § 50-20(i1). A statute directing performance in a particular manner by implication forbids performance in any other manner. 82 C.J.S. *Statutes* § 327 (1953).

The fact that the drafters of § 50-20(i1) used conspicuously different language from that used in § 50-20(e) further shows that "asset transfers" were not intended to include distributive awards. While § 50-20(e) provides for "distribution of marital property" and "distributive awards," § 50-20(i1) provides that the court may order a spouse to "*transfer the use and possession* of some or all of (the marital) assets." (Emphasis added). It is a tenet of statutory construction that "a change in phraseology when dealing with a subject raises a presumption of a change in meaning." *Latham v. Latham*, 178 N.C. 12, 100 S.E. 131 (1919). If the legislature had wanted to allow the trial court to make interim lump sum cash awards pending the final outcome of an equitable distribution action, it could have expressly written § 50-20(i1) to include "distribution of marital property" or "a distributive award" as well as or instead of "transfer the use and possession of . . . assets" language. The fact that the legislature had the option to include this language, but chose not to, is presumptive evidence that it intended that the provision not encompass such options.

Another well-established principle of statutory construction is that a provision will not be read in a way that renders another provision of the same statute meaningless. *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 276 S.E.2d 443 (1981), (statute must be construed so that none of its provisions shall be rendered useless or redundant); *State v. Tew*, 326 N.C. 732, 392 S.E.2d 603 (1990); *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). However, that is just what would occur if courts were allowed to order equitable and lump sum distributions through § 50-20(i1). There would be no need to use the final equitable distribution proceedings to divide and allocate spouses' assets, because division and distribution would have occurred at the interim stage. Thus, §§ 50-20(a) and (d), under which courts presently classify, value, and distribute property, would be unnecessary. Clearly, the legislature did not intend such a result.

We stress that adequate relief for this plaintiff is available within the scope of the statute. If the trial court wants JoAnn Brown to benefit from the principal marital asset, Brown Brothers Construction, it can order the transfer to her of some or all of defendant's one-half interest in the company. As possessor of that interest, she can then use it to realize a share of the company's profits, as defendant would otherwise do, until a final equitable distribution award can be entered. Such a transfer would preserve the marital estate and not involve a potential sale of the family business, a sale which as previously indicated would certainly result in long-term financial prejudice for all parties involved, which prejudice § 50-20(i1) specifically seeks to avoid.

By their second and third assignments of error, the defendants contend that the trial court erred in not considering all of the provisions of § 50-20 in making the award and that the trial court erred in making the award prior to ruling on the objections and exceptions filed by the parties with respect to the referee's report. Because we hold that the trial court erred in awarding the lump sum cash award, it is unnecessary for us to decide the merits of these and the other remaining assignment of error. However, because the second and third assignments relate to the application of § 50-20(i1), we find it necessary to comment briefly. Section 50-20(i1) provides for an interim transfer to be ordered prior to a final decision in the equitable distribution award. If the trial court considers all provisions of § 50-20 and rules on all the ob-

jections and exceptions to the referee's report, the end result would constitute a final order of equitable distribution. Requiring such considerations, then, would render the interim transfer provision inconsequential, which we do not find to be the intention of the legislature.

For the foregoing reasons, the decision of the trial court is

Vacated.

Judge JOHNSON concurs.

Judge GREENE dissents in a separate opinion.

Judge GREENE dissenting.

I disagree, for the reasons given below in Section I, with the majority that the interim cash award of $400,000 to plaintiff is "in contravention" of N.C. Gen. Stat. § 50-20(i1). I agree, for the reasons given below in Section II, that it was not necessary for the trial court to consider "all of the provisions of [s]ection 50-20 in making the award" and to rule "on the objections and exceptions filed by the parties with respect to the referee's report." I do note, however, that because the award is not a final adjudication of the merits of the case and because any interim award is subject to a full accounting upon entry of the final equitable distribution judgment, the appeal is interlocutory, does not affect a substantial right, and would ordinarily be dismissed. *See Baker v. Rushing,* 104 N.C. App. 240, 245, 409 S.E.2d 108, 111 (1991). Because, however, of the important issues presented relating to the proper application of N.C. Gen. Stat. § 50-20(i1), I would treat this appeal as a petition for writ of certiorari and grant the writ. N.C.G.S. § 7A-32(c) (1989); *see Jerson v. Jerson,* 68 N.C. App. 738, 740, 315 S.E.2d 522, 523 (1984).

I

The basic issue presented is whether N.C. Gen. Stat. § 50-20(i1) permits a trial judge to make an interim distributive award.

Although Section 50-20(i1) is silent on the issue of distributive awards, the intent of the legislature must be determined from an examination of the entire statute of which Section 50-20(i1) is a part. *See Utilities Commission v. Duke Power Co.,* 305 N.C.

1, 13, 287 S.E.2d 786, 793 (1982) ("All parts of the [same] act should be considered, and construed together."). Section 50-20(e), a portion of the statute of which Section 50-20(i1) is a part, permits distributive awards when "equitable distribution of all or portions of the marital property in kind would be impractical." N.C.G.S. § 50-20(e) (Supp. 1992). Although Section 50-20(e) has generally been used in the context of final awards, there is no language in the section that would prohibit its use in the context of interim awards. Furthermore, because distributive awards in the context of Section 50-20(i1) can assist the trial court in achieving "equity between the parties" and "facilitate, effectuate or supplement" an interim transfer of marital assets, they are sanctioned by Section 50-20(e). *See* N.C.G.S. § 50-20(e).

As with all equitable distribution judgments, an interim distributive award must include written findings of fact adequate to support the conclusions of law. N.C.G.S. § 50-20(j) (Supp. 1992); *Armstrong v. Armstrong*, 322 N.C. 396, 403, 368 S.E.2d 595, 599 (1988). Accordingly, upon a finding that there exists "just cause"[1] for an interim order to transfer "the use and possession" of marital assets and upon the additional finding that an interim transfer of marital assets in kind is impractical, the trial court may enter an interim distributive award.

In this case, the trial court found as a fact that there was "just cause" for the interim award and there is evidence in this record to support that finding. Although not defined by the statute, the ordinary meaning of the term includes causes that are "fair and honest," "based on reasonable grounds," *Black's Law Dictionary* 1001 (4th ed. 1968), "properly due or merited," and "based on fact or sound reason." *American Heritage Dictionary* 694 (2d ed. 1985). *See Reed v. Byrd*, 41 N.C. App. 625, 628, 255 S.E.2d 606, 608 (1979) (words not defined by statute must be given ordinary meaning). This record reveals that the plaintiff has not had the money to fund this lawsuit which has extended over a decade; plaintiff has worked minimum-wage jobs; she has been deprived of a car for the last five years; she has gone from time to time without heat in the house; she has had access only to a minuscule part ·of the marital estate; and defendant D.T. Brown, Jr. has had access

---

1. Because the determination of "just cause" is reached by natural reasoning, not by application of fixed rules of law, it is an ultimate finding of fact, not a conclusion of law. *See Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982).

to and control of virtually all of the income-producing marital assets since their separation in 1981.

The trial court was also required, as a prerequisite to an interim distributive award, to include in its order a finding of fact that an in kind transfer of marital assets was impractical. Although there is no such finding in this order, this omission by the trial court cannot serve as a basis for reversing the award because defendants' assignment of error is inadequate to preserve this error for review. The relevant assignment of error, "[t]he Trial Court's award . . . without evidence to support the facts, facts to support the conclusions, and conclusions to support its Order," fails to direct this Court to the findings challenged as inadequate and is no more than a broadside attack on the order of the court and thus ineffective. N.C.R. App. P. 10(c)(1) (1992); *see also Jones v. Shoji*, 110 N.C. App. 48, 51, 428 S.E.2d 865, 866-67 (1993). In any event, all the evidence in this record would support a finding that it would have been impractical to order the defendants to transfer a portion of the paving and construction company to the plaintiff. Such a transfer in kind would only have disrupted the operation of the construction company, which was a partnership owned by the plaintiff's former husband and his father and brother. Furthermore, converting the interest in the partnership to usable cash would have been most difficult.

## II

The issue presented is whether an interim award under Section 50-20(i1) must be determined, as defendants argue, consistent with every other "provision of Section 50-20 and the considerable body of equitable distribution caselaw."

An interim allocation of marital assets is in the nature of a preliminary injunction. As such, the matter can be decided on verified pleadings and affidavits, N.C.G.S. § 1-485 (1983); *State of North Carolina ex rel. Morgan v. Dare To Be Great, Inc.*, 15 N.C. App. 275, 276, 189 S.E.2d 802, 803 (1972), "but the court may direct that the matter be heard wholly or partly on oral testimony or depositions[,]" N.C.G.S. § 1A-1, Rule 43(e) (1990); and the moving party is required to make only a prima facie showing, that is that her ultimate success in the equitable distribution proceeding is a likelihood, at least to the extent of the interim award requested. *See Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). Accordingly, the procedure utilized and

the evidence considered by the trial court differs substantially from that required for the entering of a final equitable distribution judgment. For example, it is not necessary for the trial court to accept evidence on the distributional factors of Section 50-20(c). To hold otherwise would convert the interim award proceeding into a full trial on the merits and thus preclude any relief until the parties are fully prepared to proceed to a full scale trial and the case can be scheduled for trial. This summary proceeding is further justified by the language of the statute which requires "a full accounting when the property is ultimately allocated in an equitable distribution judgment." N.C.G.S. § 50-20(i1) (Supp. 1992).

In this case, the trial court considered, in addition to oral and written arguments, a referee's report which valued the marital property at $2,400,000. Thus, based on the value of the marital estate and the fact that there was no evidence of any marital debt, there was a likelihood that the plaintiff would ultimately prevail on the merits at least to the extent of $400,000.

Furthermore, because of the preliminary nature of the interim award proceeding, it was unnecessary for the trial court to rule on defendants' objections and exceptions to the referee's report prior to ordering an interim allocation of marital assets.

N.C. Gen. Stat. § 1A-1, Rule 53(g)(2) requires the trial judge, upon exception duly noted by a party, to consider the evidence and "give his own opinion and conclusion, both upon the facts and the law." N.C.G.S. § 1A-1, Rule 53(g)(2) (1990); Quate v. Caudle, 95 N.C. App. 80, 83, 381 S.E.2d 842, 844 (1989). This duty, however, applies only as a prerequisite to the entry of a final judgment based on the report. In the case presented, the award was interim in nature and any findings and conclusions entered by the trial court are "not res adjudicata on the final hearing." Schloss v. Jamison, 258 N.C. 271, 276, 128 S.E.2d 590, 594 (1962). Thus, the defendants will have ample opportunity to have their objections and exceptions ruled on by the trial court prior to the entry of the final judgment of equitable distribution.

Based on the above analysis, I would affirm the order of the trial judge granting plaintiff's motion for an interim cash award under Section 50-20(i1).